SARAH A. WOODMAN *vs.* METROPOLITAN RAILROAD
COMPANY.

Suffolk.    March 21, 1889. — May 31, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Negligence — Street Railway — Independent Contractor — Due Care —
Nuisance.*

A street railway corporation employed to lay a new track in a city street a
contractor who so negligently enclosed the space where the track was being
laid that the ends of rails lying there projected beyond the barrier into the
street at a point where there was no crosswalk. A person crossing the street
at this point after dark fell over the ends of the rails and was injured. *Held,*
that the corporation was liable for the injury, and that the fact that the work
was being done under an independent contract would not exonerate it from
liability.

TORT by the administratrix with the will annexed of Sir Moses
D. Perkins, for personal injuries sustained by him, through the
alleged negligence of the defendant while crossing Adams Square
in Boston.    Trial in the Superior Court, before *Sherman*, J.,
who allowed a bill of exceptions, which so far as material was
as follows.

There was evidence tending to show the following facts.
Perkins was injured on October 15, 1885, at about half-past six
o'clock in the afternoon, at which time it was dark, the sun on
that day having set at two minutes past five o'clock.    On that
date the defendant was having an additional car track laid
through the lower part of Adams Square, which is a public
highway in the city of Boston, from Devonshire Street northerly
into New Washington Street.    The defendant had duly obtained
a location from the proper municipal authorities, and a permit
to dig up the street, and Gore and Company, contractors, were
doing the work.    A trench had been excavated through Adams
Square, except at a point where an existing track called the
South Boston track extended from Devonshire Street northerly
and westerly into Brattle Street, passing in a curve around the
east and north side of the Adams Monument, so called, placed
near the centre of the square.    This track, with a clear space
of several feet on either side, was left unobstructed, for passage

between the easterly and westerly portions of the square. At each side of the passage and across the ends of the trench were placed wooden horses as barriers. Between that portion of the trench on the southerly side of this passage and the monument was a pile of dirt thrown up in digging, and then a pile of rails, ten or fifteen in number, thirty feet long and ten or fifteen inches high, lying parallel with the excavation. At the close of work on October 15, a barrier consisting of one or two heavy sticks of timber, and intended to protect passers by from injury by reason of the excavation or of the piles of dirt and rails, had been placed so as to extend from the pile of dirt to the curb of the monument, the middle portion running across and above the pile of rails, and supported upon it by a block of wood placed on the rails. The ends of the rails projected irregularly beyond this barrier and towards the passage, as was variously estimated, from five or eight inches to four or five feet.

The shortest route for a person going from the lower or east side of Adams Square over towards Brattle Street was through the passage above described, between the two portions of the trench. There was no cross-walk maintained through this passage. The plaintiff's testator, who was between eighty-three and eighty-four years old, was seen just before the accident walking at a moderate pace across Adams Square through this passage towards Brattle Street, and at a point about half-way between the monument and the South Boston track was seen to fall. When he was reached by those who came to his assistance, he was lying on the ground within two feet of the end of the pile of rails, and on the side towards Brattle Street, and was found to have been injured. Assistance was rendered him, and he was taken to his home. The next morning spots of blood were found on the pavement, from twelve to eighteen inches from the projecting ends of the rails.

On the question whether the place where the accident occurred was properly lighted, the evidence was conflicting. One witness only testified that there was no lantern on the pile of rails, and that an electric light near by in the square was not burning; while many other witnesses testified that the electric light was burning, and that lighted lanterns were placed on the timbers lying across the pile of rails and all along the trench.

Upon the issue as to the defendant's liability for the acts of those employed to do the work, evidence was admitted tending to show that the work was done under a verbal agreement between Gore and Company, the contractors, and the president of the defendant corporation; that the defendant was to furnish the materials, and the contractors were to procure the permit, supply the labor, and do all the work except the teaming, and were to attend to the lighting and fencing of the place where the work was to be done; that the barriers were placed and the lights set by persons employed by the contractors; and that the rails were left where they were by order of the contractors' foreman.

The judge refused to give the following instructions, as requested by the defendant:

" 1. Plaintiff cannot recover on the whole evidence.

" 2. The plaintiff has not sustained the burden of proof on the question of Mr. Perkins's exercise of due care, and therefore cannot recover.

" 3. There is no evidence to go to the jury that Mr. Perkins when he fell was in the exercise of due care.

" 4. There is an utter absence of any evidence of what Mr. Perkins's conduct was just before he fell and when he fell, and so there is no sufficient evidence to justify the jury in finding that he was in the exercise of due care.

" 5. If it is impossible for the jury to say what Mr. Perkins was doing, and what his conduct was just before he fell and at the moment he fell, the plaintiff has not sustained the burden of proof, and the verdict of the jury must be for the defendant. . . .

" 8. Mr. Perkins, being a foot passenger, was bound to keep on the sidewalks and street crossings in passing from the lower to the upper side of Adams Square, and by unnecessarily diverging therefrom he took the consequences, and his administratrix cannot recover.

" 9. The Metropolitan Railroad Company, having employed Gore & Co. to construct the new track, is not liable for any injury suffered by plaintiff's testator caused by negligence of Gore & Co.'s servants, if there was such negligence.

" 10. If the jury are satisfied that under this contract between the defendant and Gore & Co. it was the duty of the

latter to place proper barriers and lights, then the defendant cannot be held liable for any negligence of Gore & Co. in failing to place the barriers and lights properly, if the jury should find they were improperly placed.

" 11. There is no sufficient evidence of negligence or carelessness on the part of Gore & Co. or its servants in placing the barriers and lights to warrant the jury in finding a verdict against the defendant."

The judge, after instructing the jury that the plaintiff must prove that the testator was in the exercise of such care as a person of his age would ordinarily exercise under the circumstances, said, among other things: " Something has been said about where Mr. Perkins had a right to walk, and where he had not a right to walk. I do not understand that there is any rule of law in regard to that. A man has a right to walk anywhere in the street or sidewalk, provided he exercises due care. If it is not due care to leave a sidewalk or flagging, then he is not in the exercise of due care. If it was due care, considering all the circumstances surrounding the case, to leave the sidewalk and flagging, then he had a right to leave it if he was exercising due care in leaving it. You are to determine, considering all the evidence bearing upon what was being done there, where the place was that he was walking, what the barriers and the lights were, — everything bearing upon that question, — whether he was at the time exercising due care."

The judge also instructed the jury : " Some question has been raised about whether the defendant corporation was liable, provided it had made a contract with Gore & Co. to do this work. I do not understand that this railroad company had a right to relieve itself of its duty to the public, when it had permission to open those streets and to mend its ways or lay down new tracks, or that it can avoid or relieve itself from liability for carelessness, by letting out the contract. I therefore instruct you that if Gore & Co. put those rails where they were located, and that the sole cause of the accident was the putting them there and not properly guarding them, then that would not excuse the defendant, and it would be liable for this accident provided you find that the plaintiff was in the exercise of due care, and that Gore & Co. were negligent."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*M. F. Dickinson*, ( *G. D. Braman* with him,) for the defendant.
*R. M. Morse, Jr., & M. Morton, Jr.*, for the plaintiff.

HOLMES, J.  The plaintiff's testator was injured by a fall in the street.  He was seen to fall, and was picked up senseless at a point where some rails projected beyond a temporary barrier enclosing a place where the defendant was having a track laid. There was no evidence of any other possible cause of the fall. This warranted a finding that he tripped over the end of the rails.

The street was a public highway, and the jury very properly might find that it was negligent to allow the ends of the rails to project beyond the barrier, especially if they believed that it was dark at the place, as one witness testified, although the weight of the testimony looks the other way on paper.

There was testimony that the plaintiff's testator was walking in the usual way just before he fell.  Taking into account what he had a right to assume with regard to that part of the street which was not enclosed by barriers, the jury was warranted in finding that he was using due care.  *Learoyd* v. *Godfrey*, 138 Mass. 315, 324.  *Lyman* v. *Hampshire*, 140 Mass. 311, 314.  Indeed, if they believed that it was dark, they might have considered that the testator had been led into a trap.  It is suggested that he was not crossing at a regular crossing.  But his rights were not changed by a slight change in the pavement.  He had a right to cross where he chose, if the jury thought that he used due care.  *Raymond* v. *Lowell*, 6 Cush. 524.  *Gerald* v. *Boston*, 108 Mass. 580.

It is argued that the work was done by an independent contractor.  Assuming that there was evidence warranting that conclusion, we are of opinion that the fact would not exonerate the defendant.  In some cases a party is liable notwithstanding the intervention of an independent contractor lawfully employed. A plain case is when he is made personally responsible by statute for the prevention of the cause of the damage complained of.  *Gray* v. *Pullen*, 5 B. & S. 970.  Thus it is settled in many States that a city charged with the duty of keeping the streets in repair is answerable for an improperly guarded excavation

made by a contractor; for instance, in building a sewer. *Storrs* v. *Utica*, 17 N. Y. 104. *Detroit* v. *Corey*, 9 Mich. 165. *Birmingham* v. *McCary*, 84 Ala. 469. *Logansport* v. *Dick*, 70 Ind. 65. *Houston & Great Northern Railroad* v. *Meador*, 50 Texas, 77. *Circleville* v. *Neuding*, 41 Ohio St. 465, 469. *Baltimore* v. *O'Donnell*, 53 Md. 110. *Robbins* v. *Chicago*, 4 Wall. 657, 679. *Water Co.* v. *Ware*, 16 Wall. 566. In the present case it would not stretch the words of the Public Statutes and of the defendant's charter very much to say that such a personal duty was imposed upon it. Pub. Sts. c. 113, § 32. St. 1853, c. 353, § 3. See *Quested* v. *Newburyport & Amesbury Horse Railroad*, 127 Mass. 204; *Osgood* v. *Lynn & Boston Railroad*, 130 Mass. 492; *Brookhouse* v. *Union Railway*, 132 Mass. 178; *Braslin* v. *Somerville Horse Railroad*, 145 Mass. 64.

But further, apart from statute, if the performance of a lawful contract necessarily will bring wrongful consequences to pass unless guarded against, and if, as in the present case, the contract cannot be performed except under the right of the employer, who retains the right of access to the premises, the law may require the employer at his peril to see that due care is used to prevent harm, whatever the nature of his contract with those whom he employs. *Sturges* v. *Cambridge Theological Education Society*, 130 Mass. 414. *Stewart* v. *Putnam*, 127 Mass. 403, 407. *Gorham* v. *Gross*, 125 Mass. 232, 240. *Bower* v. *Peate*, 1 Q. B. D. 321, approved in *Dalton* v. *Angus*, 6 App. Cas. 740, 4 Q. B. D. 162, and 3 Q. B. D. 85. *Pickard* v. *Smith*, 10 C. B. (N. S.) 470. *Hole* v. *Sittingbourne & Sheerness Railway*, 6 H. & N. 488, 500. *Circleville* v. *Neuding*, 41 Ohio St. 465.

Laying the track for the defendant necessitated the digging up of the highway, and the obstruction of it with earth and materials. This obstruction would be a nuisance unless properly guarded against. The work was done under a permit issued to the defendant. Considering the general principle of the law, and also the special relations of horse railroads to the highway and the policy of the statutes, so far as the Legislature has expressed itself upon the subject, we are of opinion that the defendant, having caused the highway to be obstructed, was bound at its peril to see that a nuisance was not created. *Veazie* v. *Penobscot Railroad*, 49 Maine, 119, 123. See also *Darmstaetter* v. *Moynahan*, 27 Mich. 188.

Exactly how far this principle shall be carried is a question of nicety. But on the whole we are of opinion that the present case falls within it, and does not resemble those where the cause of injury was an application of force to the person or property of the plaintiff by a transitory act or by a defect in machinery.

*Exceptions overruled.*