(10 Misc. Rep. 703.)

REYNOLDS v. VAN BEUREN et al.

(Common Pleas of New York City and County. General Term. January 7, 1895.)

1. NEGLIGENCE—EVIDENCE—FALLING OF SIGNBOARD.
   The mere falling of a signboard from the roof of a building into the street is prima facie evidence of negligence on the part of the person who maintained the signboard, though the wind at the time was high, but not unusually high for that locality.

2. EVIDENCE—EXPERT TESTIMONY.
   Whether wood is rotten or not is a matter of common knowledge, and not subject to expert testimony.

3. APPEAL—DISCRETION OF TRIAL COURT—REFUSAL TO STRIKE OUT TESTIMONY.
   Refusal of the trial court to strike out evidence is a matter within its discretion.

Appeal from trial term.

Action by Charles H. Reynolds against Alfred Van Beuren and others. From a judgment entered on a verdict in favor of plaintiff, defendants appeal. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

Leroy B. Crane, for appellants.
Hyland & Zabriskie, for respondent.

BOOKSTAVER, J. This action was originally brought against the defendants, as lessees of the roof privileges and sign on the premises No. 1277 Broadway, and also against the owners of the building. At the close of plaintiff's case the action was dismissed as to the owners of the fee, and the appellants contend that it should also have been dismissed as to them, on the grounds: (1) That the plaintiff had failed to prove that the appellants were lessees and in possession of the roof of the premises 1277 Broadway, or that they had erected or caused to be erected thereon the signboard in question for advertising purposes. (2) That the plaintiff had failed to prove that the signboard was negligently constructed, maintained,

or used by appellants, or that the same was negligently or improperly fastened to the roof of the building, or had been permitted by the appellants to be or become out of repair, rotten, dilapidated, or unsafe.  (3) That the plaintiff had failed to show that the sign was dangerous to human life and limb, or that the use thereof by the appellants constituted a nuisance.  (4) Because it appeared from the evidence that the appellants had not erected or caused the sign to be erected, and that their connection therewith was simply as lessee of the privilege to advertise thereon at a stipulated rental, and that, consequently, the appellants were under no legal obligation to keep the signboard in repair.  (5) That plaintiff had failed to show that the appellants had any knowledge of the defective condition of the sign at the time of the accident, or that they ought to have known it was in a bad, dangerous, improper, and insecure condition.  (6) On the ground that the injury sustained by the plaintiff was the result of unavoidable accident; and (7) that the plaintiff had failed to show that he used such efforts as a reasonable man, under like circumstances, would or could have done to avoid the injury, and that he contributed to the injury by his own negligence, in the want of due care, or bad judgment, in not avoiding or running away from threatened danger.  The lease of the roof privileges to the appellants, made by the lessee of the entire premises, was put in evidence, and from it it appears that such roof privileges were to be used for advertising purposes.  It also appeared from the evidence that the appellants maintained thereon a sign 9 feet 6 inches high and 23 feet long, consisting of a wooden frame covered with galvanized iron, on which were pasted advertising bills, and which was without holes to permit the wind to pass through.  This structure was fastened to the roof with four wooden braces,—one at each end, and two at the center,—which came down from the top, and were bolted into the joists of the roof; but it was not in any way fastened to the adjoining building, or stayed by any other arrangement than that before mentioned.  On the 26th September, 1892, the plaintiff, while walking along the westerly side of Broadway, in front of these premises, was hit by this sign falling, and thereby received injuries on his side, and the large toe of the left foot was badly hurt,—so much so that it became necessary to amputate it.  From the evidence, it appears that the wind had been blowing that day at the rate of 33 miles an hour between 1 and 2 o'clock p. m., but had moderated to about 23 or 24 miles an hour between 2 and 3 o'clock of the same afternoon, at which time the accident happened.

The mere falling of a sign into a public street is prima facie evidence of negligence.  Thus, it is said in Volkmar v. Railway Co., 134 N. Y. 420, 31 N. E. 870:

"It has been held that where a building adjoining a street falls into the street, in the absence of explanatory circumstances, negligence will be presumed, and the burden is placed upon the owner of showing the use of ordinary care; that where a plaintiff was passing on a highway under a railroad bridge, when a brick fell from one of the pilasters upon which an iron girder of the bridge rested, striking him upon the shoulder, causing injury, negligence would be presumed; that where a barrel rolled out of the window of a warehouse onto a street, injuring a person passing, negligence

would be presumed; that where a person, while walking along the street ·in front of a building, was struck by a falling chisel, the presumption of negligence is sufficient to call for an explanation; that where plaintiff was injured while walking on the sidewalk of a street, immediately under the defendant's railroad, by being struck with a heavy piece of metal, which fell from one of the defendant's cars passing above, that, from the nature of the ·accident, negligence might be inferred"; citing Mullen v. St. John, 57 N. Y. 567; Kearney v. Railroad Co., L. R. 5 Q. B. 411, L. R. 6 Q. B. 759; Byrne v. Boadle, 2 Hurl. & C. 722; Cahalin v. Cochran, 1 N. Y. St. Rep. 583; Goll v. Railroad Co. (Super. N. Y.) 5 N. Y. Supp. 185; Id., 125 N. Y. 714, 26 N. E. 756; Payne v. Railroad Co., 83 N. Y. 572.

And in the same case the court, at page 422, says:

"But even if this evidence was sufficient to remove the presumption, as ·held by the general term, the credibility of the witness would still be involved, and be a question for the jury"; citing Dean v. Van Nostrand (N. Y. App.) 4 N. E. 134; Elwood v. Telegraph Co., 45 N. Y. 549, 554.

Where an accident is one which would not ordinarily have happened, if due care and caution had been used, the presumption of negligence is sufficient to call for explanation, and if this is not offered the jury may find negligence. Cahalin v. Cochran, 1 N. Y. ·St. Rep. 583. While, as a general proposition, it is true that the burden of showing negligence on the part of the defendant causing an injury rests in the first instance upon the plaintiff, yet in an action of this character, when he has shown a situation which could ·not have been produced, except by the operation of abnormal causes, the onus rests on the defendant to prove that the injury was caused without his fault. Caldwell v. Steamboat Co., 47 N. Y. 291; Edgerton v. Railroad Co., 39 N. Y. 227; Curtis v. Railroad Co., 18 N. Y. ·534; Ginna v. Railroad Co., 67 N. Y. 597. When the motion for a ·dismissal was made, therefore, the evidence had clearly raised a presumption of negligence against the defendant; and the only question relating thereto was whether this presumption had been sufficiently negatived by the evidence introduced by the appellants, which was a question for the jury. This court has held, in Millie v. Railway Co., 5 Misc. Rep. 304, 25 N. Y. Supp. 753, that where a person passing along public streets sustained injury by being struck with a substance thrown or falling into the highway, or by the tumbling down of a ruinous building, the maxim "res ipsa loquitur" applies; citing some of the cases before mentioned, and Mullen v. St. John, 57 N. Y. 567; Woodman v. Railroad Co., 149 Mass. 335, 21 N. E. 482; Railroad Co. v. Locke, 112 Ind. 404, 14 N. E. 391. See, also, Ander·son v. Railroad Co. (Com. Pl. N. Y.) 21 N. Y. Supp. 1. We think that, when the motion was made to dismiss the complaint by the appellants, they had not only not rebutted the presumption of negligence thus created, but that the plaintiff had affirmatively shown actual ·negligence on the part of the appellants, for from such evidence the jury could draw the conclusion, if they believed the witnesses for the plaintiff, that the sign was old and rotten; that the nails had been drawn through the wood; that no repairs had been done on ·it since December, 1891,—and there was no evidence offered by the appellants tending to show that any examination of the sign ·had been made by them, their agents, servants, or employés, after

that time, although they daily used it; and it was their duty to exercise at least ordinary care and prudence to discover whether or not it was in any way defective. The carpenter whose business it was to look after the signs was not produced by the appellants, or sworn.

Whether or not the injury was caused by an inevitable accident, over which the appellants had no control, was, under the facts proven in this case, eminently a question for the jury to decide, and we think they decided properly. The wind had been blowing nearly one-third faster an hour before the accident than at the time of the accident. It is the duty of persons erecting and maintaining such appendages as this sign to secure the same so that it would not only be equal to the ordinary vicissitudes of the weather, but would be able to withstand the force of gales which experience has shown to be liable to occur in this vicinity; and it is within the knowledge of every one that a much higher rate of wind is frequently experienced than the highest rate at which the wind was blowing on that day. See Morris v. Strobel & Wilken Co., 81 Hun, 1, 30 N. Y. Supp. 571.

Appellants contended upon the trial, although they did not urge it on the argument of the appeal, that the plaintiff in some way contributed to the injury, by his own negligence in running into danger, instead of out of it, at the time the sign fell. But, from the relative situation of the sign and of the plaintiff at the time that it gave way, he could not see the sign. He simply heard a crash, as of something giving way. This naturally disturbed his mental equilibrium; and if, under the impulse of sudden terror, produced by the imminency of danger, the plaintiff instinctively attempted to escape, the law does not require of him the same prudence it does of one not in danger, and absolves such a person from the imputation of negligence, even if he does not take the best means of avoiding it. Under the circumstances, he is not accountable for the direction in which he ran.

A witness for the plaintiff has testified as follows:

"I came back from the station house to this building, and I said, 'I guess I will look at this sign'; and it looked to be all broke,—lots of old broken boards and stuff there."

He was then asked in what condition was the wood. This was objected to by appellants' counsel, but the objection was overruled, and the witness was allowed to answer the question. But from the record, as it appears before us, the witness did not answer the question thus put. He did, however, immediately afterwards, in response to questions put by appellants' counsel, say of the sign:

"It was old, rotten wood. It seemed as though all the nails were drawn out. The nails were not broken. I went up and examined it myself, and the nails were not broken, but old, rotton wood; just the thing to draw it out, and all old, rotten wood."

The testimony objected to, therefore, appears to have been drawn out by appellants' counsel himself. But, even if this testi-

mony had not been given in answer to the appellants' counsel, it would not have been error to admit it. It was not a question of expert evidence, but, if it were, every one at all conversant with wood is a sufficient expert to know whether wood is rotten or not, when he sees it. Besides, he does more than merely say it was rotten. He goes on to show the facts as to the rottenness. A witness for the plaintiff was examined as to the manner in which the sign was fastened on the roof, and on cross-examination it appeared that he had been on the roof but once and that nearly two years before the accident, whereupon appellants' counsel moved to strike out the evidence, which was denied. Such a motion is in the discretion of the court, and not reviewable on appeal; Hutton v. Murphy, 9 Misc. Rep. 151, 29 N. Y. Supp. 70. But, even if this were not so, there was no testimony to show that any change had been made in the way in which the sign was fastened after the witness had seen it. The presumption, therefore, would be that it continued as it then was.

Appellants contend that the court, in delivering the charge to the jury, improperly reflected upon the credibility of one of their witnesses, and argue that it had no right to seek to discredit the witness, but that it was the province of the jury to determine the credibility. As we read the charge, this is precisely what the learned judge did, for he said, "This question of the credibility of the witness is exclusively for you." Besides, he did not seek to discredit the witness' testimony. He simply pointed out what was the fact,—that the witness was the lessee of the building on which the sign was, which he had let to the appellants, and that, under certain circumstances, he would be as responsible to the plaintiff as the appellants themselves, and charged them that they were to consider that fact in determining his credibility. He nowhere indicated that he did not, or the jury should not, believe his testimony.

The court charged:

"(4) If, notwithstanding the wind, the sign would not have fallen, had it been secure, the defendants are liable. If the sign had fallen anyhow, under the pressure of the wind, though secure, then, of course, the defendants are not liable. Then it was an inevitable accident."

To the first sentence of this portion of the charge, appellants' counsel excepted. But this was no more than pointing out the difference between the security and the insecurity of the sign, and was equivalent to saying that, if the sign fell by reason of its insecurity, then the appellants were liable, but that if properly secured, and caused to fall by the pressure of the wind, without referring to any degree of rapidity, then it would be the result of inevitable accident, and the appellants would not be liable. This was clearly as favorable to the appellants as they had any right to ask.

Appellants' counsel contends that the verdict was against the weight of evidence. We have carefully read over all the testimony in the case, and are of the opinion that the verdict was fully sustained by the evidence, but do not think it necessary to

discuss that question further than has been done in considering the motion for the dismissal of the complaint.

As to the contention that the damages are excessive, the court expressly charged: "It is for you, upon the evidence, to say what you think will be a fair, just, and reasonable compensation for the injuries sustained. I lay the emphasis on the word 'compensation,' in this case, because, I charge you, you would not be authorized to give what the law calls 'punitive' or 'vindictive' damages,"—thus clearly calling the attention of the jury to the fact that they were not to award punitive damages; and we cannot say that a verdict of $2,000 for the injury to plaintiff's side and leg, and the loss of a great toe, was excessive, although he was disabled by reason thereof for a period of only two months and a half, especially in view of the fact that he testified he still suffered occasionally from the injuries received, and was at times disabled by reason thereof. The law recognizes no distinction between white and colored suitors, and in the absence of any evidence of passion, prejudice, or bias, we must conclude that the jury fairly awarded compensation merely on the facts established by the evidence.

Our attention has not been called to any other alleged errors, either on the argument of the appeal, or in appellants' brief. The judgment must therefore be affirmed, with costs. All concur.