### NATHAN REUBEN v. JOHN SWIGART.

LIABILITY OF AN ABUTTING LOT OWNER FOR INJURIES RECEIVED FROM OBSTRUCTIONS BEING PLACED IN THE STREET IN FRONT OF HIS LOT.

> Where the owner of a city lot abutting upon a street applies for and obtains from the city permission to use a part of the street at the front of his lot for the deposit of material to be used in the construction of a building on such lot, and a condition of such permission required that lights or guards should be placed about any obstruction in such street caused by the deposit therein of such building material; and where, in pursuance of such permission, building materials are so placed in said street as to cause a partial obstruction thereof, and the same are not properly lighted or guarded, so that a traveler on such street is injured: *Held*, that in an action by the person so injured against the owner of said lot the latter cannot escape liability for such acts by showing that such materials were so deposited by a person to whom he had let the work of erecting said building, and over whose operations he had reserved no control.

ERROR to the Court of Common Pleas of Lucas county.

PARKER, J. (Orally.)

This is an action begun by the plaintiff in error before a justice of the peace to recover from the defendant in error on account of injuries which the plaintiff in error says that he sustained in consequence of the defendant in error allowing an obstruction to be and remain upon a street in the city of Toledo in front of the premises of the defendant in error. The cause was appealed to the court of common pleas, where a petition was filed by the plaintiff, an answer by the defendant, and to that the plaintiff replied. A general demurrer to the reply was interposed, which demurrer was sustained, and the plaintiff not desiring to plead farther, judgment was entered dismissing the petition, and for costs. On account of that judgment, error is prosecuted here by the plaintiff in error, who was plaintiff below.

The petition is quite brief and indeed all the pleadings are, and I can best state the case by reading from them:

"For a cause of action against the defendant, John Swigart, the plaintiff herein says, that sometime prior to the 15th day of January, A. D., 1896, the defendant John Swigart negligently and carelessly caused to be placed or permitted a pile or mound of sawdust to be put or remain at or near the middle of the street or public thorougfare of the city of Toledo, known as Canton avenue, at a point about the middle of the block between Jackson avenue and Smith street; that at about 6 o'clock P. M., on the evening of the 15th of January, 1896, the plaintiff was driving a horse and buggy along and through said street at the point aforesaid, in a careful and lawful manner. It being dark, and no lights or guards being on or about said mound or pile of sawdust, the said Nathan Reuben, without any fault or negligence on his part, failed to discover the said pile of sawdust, and owing wholly to the negligence and carelessness of the defendant John Swigart aforesaid, the right fore wheel of

the buggy in which plaintiff was driving struck said obstruction, and the vehicle was overturned, in consequence whereof plaintiff was thrown violently on the ground. That by reason of the premises the plaintiff was cut and bruised and otherwise injured, to his damage of $300."

For which he asks judgment.

To that an answer is filed, the first defense of which is a general denial and the allegation that if any injury resulted to the plaintiff it was through his own fault and negligence. The question here arises upon the fact set forth in the second defense.

"For his second defense to plaintiff's petition the defendant says that at the time of the alleged injury to the plaintiff, he, defendant John Swigart, together with his brother Eugene Swigart, were the owners in fee simple as tenants in common of lot No. 246 of Woodruff's addition to the city of Toledo, Lucas county, Ohio, which said lot had a frontage upon the Canton avenue mentioned in the petition of about 59 feet, and was situated about the middle of the block between Shepherd street and Smith street in said city. Defendant further says that prior to the time of said alleged injury to plaintiff, the defendant and his said brother had arranged for the erection on said lot 246 of a three story brick mercantile building, which said building was at said time in process of erection, but not completed. Defendant further says that at the time of plaintiff's alleged injury the defendant was not, nor was his said brother, in possession or control of said premises or building, or of the approaches thereto, or street in front thereof, and had not been in possession or control thereof for a long time prior thereto; that upon said date, and for a long time, prior thereto, the said premises had been in the possession and control of one Hiram F. Hall; that the defendant and his said brother long prior to the alleged injury of plaintiff had duly entered into a contract with the said Hiram F. Hall, whereby the said Hall had agreed to erect and complete the said building for the said defendant and his said brother on said lot 246 aforesaid, and to that end to make, perform, and furnish all the labor necessary to its erection, and to procure and to provide all necessary and proper material for the construction thereof. Defendant further says that in and about the construction of said building, under and by the terms of said contract, said defendant was not, nor was his said brother, to have, nor could they, or either of them have, any personal direction, control or authority over the said Hall, or over any of his laborers, employes or agents, as to how, or in what mode or manner he, or they, should perform or complete the said contract or erect or complete said building; nor was said Hall, nor were any of his agents, laborers, or employes on said day or for a long time prior thereto in effect under or subject to any direction, control or authority of this defendant or of his said brother as to the mode or manner in which the said work or erection should be performed; nor did defendant or his said brother then or at any time attempt to exercise any such control, direction or authority."

This defense further sets forth that Hall, the contractor, took complete possession of the lot, and had such possession up to the time of the alleged injury, and that at the time the premises were put in the possession of Hall they were in all respects in a safe condition; that the pile of sawdust mentioned in the petition was not then upon the street, and

that the defendant, at the time of the alleged injury and at the time the sawdust was placed upon the street, was living in Cincinnati, so that he had no knowledge of the fact.

"Defendant further says that the sawdust mentioned in the petition was procured by said Hall for the purpose of filling in one of the floors of said building for the prevention of noise. and solely for use in and about the construction of said building, under the terms of the contract between said Hall and the defendant and his brother mentioned above; and when said sawdust was delivered at the said building such delivery being as aforesaid about two hours prior to plaintiff's alleged accident, the same was placed almost entirely upon the sidewalk, etc."

That said sawdust, if it was improperly placed in the street, was placed there by Hall or by his laborers, employes, or agents.

To that the plaintiff filed the following reply:

"The plaintiff for a reply to the second defense in the defendant's answer herein says, that prior to the commencement of the construction of the building referred to in the plaintiff's petition and answer of the defendant filed in the above entitled section, the defendant herein, on application, was given the privilege or right, under sec. 622 of the revised ordinances of the city of Toledo, to place building material to be used in the construction of said building in the thoroughfare or street known as Canton avenue, in said city of Toledo. That by virtue of such permission given the defendant by the street commissioner, a mound or pile of sawdust referred ' in the petition and answer, was placed in the street in front of the d. dant's said premises, but negligently and carelessly left in an unguarded and unsafe condition, and without lights to warn the public of its location, on the night the plaintiff herein was injured. That under sec. 626 of the revised ordinances of the city of Toledo the defendant herein was required to place guards or lights around such an obstruction, as the one herein referred to, and further provides that in case any accident should happen or injury result by reason of the failure to place said guards or lights around an obstruction of the kind referred to, the person giving said permission to obstruct the street would be liable for the damages resulting from such omission or want of care."

As I have said, the general demurrer to that reply was sustained. The answer states the defense that the premises, including the part of the street in question, were not at the time of the alleged act of negligence and of the accident and injury complained of, under the control of the defendant, but were in the possession and under the control of an independent contractor, who had undertaken to erect a building for defendant on the lot fronting the part of the street in question, and that the defendant had no right or authority to control or supervise the work of the contractor in the premises, and that he did not do so.

It will be observed that the answer also states that the mound or pile of sawdust, etc., in question, was a part of the material to be used in the erection of the house or block to be constructed for defendant by the contractor. The demurrer admits all the allegations of the reply that are well pleaded.

Defendant in error contends that the allegations of the reply to the effect that permission had been granted to him to place materials in the street at this point, and that these materials were placed there under and

in pursuance of said permission, and that the condition of such permission provided by the ordinance, imposed upon him the correlative duty to place guards or lights about the obstruction that might be placed in the street under this permission, does not state facts taking the case out of the general rule that where a person contracts with another, exercising an independent calling, to do work for him, according to the contractor's own methods and not subject to the employer's control or order, except as to the results to be obtained, the former is not liable for the wrongful act of such contractor or his servants.

The plaintiff, on the contrary, contends that these facts bring the case within one or more of the established exceptions to the rule above stated. One exception to this rule is where the work which the contractor is employed to perform is necessarily dangerous to the public, or attended by a nuisance; and another is where a legal obligation to do a certain thing is imposed upon a person, and such person contracts with another to perform the work in connection with which this duty is imposed, and the contractor fails to perform the duty, to the injury of a third person. In neither of these cases, can the person employing another to do the work himself escape liability. It is not pretended that the case at bar comes within any other exception to the rule, but it is contended that the facts bring it within one or both of these exceptions. We will find it convenient to consider the case further with the rule and each of these exceptions in mind.

The first case to which I call attention is that of *Gray and wife* v. *Patten and Hubble,* 117 Eng. C. L. Rep. 968. The syllabus in that case I believe sufficiently states the facts, so that what is said further along by the judge delivering the opinion may be understood. The syllabus reads as follows:

1. "Where a statutory obligation is imposed on a person, he is liable for any injury that arises to others in consequence of its having been negligently performed, and this whether it was performed by himself or by a contractor employed by him.

2. "A. was empowered under the Metropolis Local Management Act, 18 and 19 Vic. c. 120, ss. 77, 110, 111, to make a drain from his premises to a sewer, by cutting a trench across a highway, and filling it up after the drain should be completed. For this purpose he employed a contractor, by whose negligence it was filled up improperly, in consequence of which damage ensued to B.: Held by this court, reversing the decision of the Queen's Bench, that A. was responsible in an action by B."

The judgment of the court was delivered by Erle, C. J., and covers a little more than a page of the report. I will read it:

"In this case the plaintiff declared for damage to his wife from falling into a drain made in the highway by the defendant. The defendant justified making the drain under a power given by the Metropolis Local Management Act, 18 and 19 Vic. c. 120, to make a drain from his premises to a sewer.

"Upon the trial it appeared that the defendant had lawfully made the drain under that act, that is to say, a trench which is across the highway, the cause of the damage, and had employed a contractor both to make it and to fill it up properly, and by the negligence of the contractor

the drain was filled up improperly, and so the damage was caused. At the trial the verdict was entered against the contractor and for the employer on the ground that the employer was not responsible for the negligence of the contractor, and so it was decided in the court below, and this is an appeal from that judgment.

"The appellant contends that a duty was imposed on the defendant Pullen, as the owner of the premises who caused the drain to be made across the highway, to fill up that drain in a proper manner. Section 77, authorizing the making up of the drain, implies that the duty to fill it up was also imposed, and sec. 110 commands that the person who makes it shall fill it up properly, and the appellant contends that the person making the drain is responsible if the duty imposed on him by the statute is not performed and damage is caused thereby, and that the complaint is of an omission to perform a duty imposed by statute not of a wrongful act by a contractor beyond the scope of his employment. He relied on *Hole* v. *The Sittingborne Railway Co.*, 6 H. & N., 488, where the duty imposed on the defendants by statute was to make a bridge that would open, and they employed a contractor who made a bridge that did not open as the statute required; and the defendants were held liable on the ground of their omission to perform the duty imposed by statute. There the Chief Baron says, in effect, that the party who undertakes that a work shall be done is not released from liability for breach of his undertaking because he employed a contractor to do it, and the contractor's neglect caused the breach; the obligation imposed by that is analogous to that created by an undertaking, the omission to perform which is not excused by reason that the party employed a third person as contractor to do it for him who failed; and he distinguished the case where a contractor in his contract does a wrongful act not according to his contract and causes damage thereby; in those cases the employer is not responsible. This distinction is also taken by Williams, J.. in *Pickard* v. *Smith*, 10 C. B. N. S., 470 (E. C. L. R., vol. 100), deciding that the employer allowing a coal merchant to make an opening in a way for coal is responsible for the negligence of the coal merchant's men in omitting to close the opening; for the employer was bound to see that the opening should be properly closed, and his omission to perform his duty is not excused by the omission of the agent whom he had employed to act for him.

"For these reasons it appears to us that the defendant Pullen is not excused from liability for omission to fill up the drain properly, on the ground that he had employed a contractor to do that duty for him, and the contractor was negligent and left the duty unperformed. We think that the duty was implied in the grant of the power to open the drain in a highway in sec. 77, and was expressed in sec. 110; and that this statutable duty is created absolutely, and is not a duty created by sec. 111 imposing a penalty to be enforced solely by enforcing the penalty. The penalty imposed by sec. 111 appears to us to be a cumulative remedy.

"The question is, whether the verdict should be entered against the defendant Pullen, and we answer that question in the affirmative."

This case is similar to the case at bar, in that a duty was imposed as a condition to the exercise of the privilege granted. But there the duty was imposed by the supreme law making power of the state, while here its imposition is attempted by a municipal government of limited legisla-

tive administration and police powers. If, however, the obligation sought to be imposed on the defendant by the city in the case at bar is within the power delegated to the city, how does the case differ in principle from that cited?

It being made the duty of the city to keep the streets clear of obstructions that would make them dangerous to travelers, and the city being bound by law to respond in damages to one injured by reason of its failure in the performance of this duty; and the city being further empowered to grant such privileges as were granted to the defendant in this case; we think it clear that the city may impose upon the person to whom the privilege is granted duties and obligations calculated to not only save the city from loss, but travelers from injury; and that such duties, so imposed, have the same effect as if imposed by the supreme law making power directly, instead of indirectly through the city as an agency of government.

The statutes upon this subject, forming the basis of these remarks and conclusions are sec. 6921, Rev. Stat., which makes it an indictable offense to obstruct a highway; sec. 2640, Rev. Stat., which gives the council the control of the streets in the following language: "The council shall have the care, supervision, and control of all public highways, streets, avenues, alleys, sidewalks, public grounds, and bridges, within the corporation, and shall cause the same to be kept open and in repair, and free from nuisance." And section 1692, the opening paragraph and subdivisions 3 and 18 of which read as follows: "In addition to the powers specifically granted in this title, and subject to the exceptions and limitations in other parts of it, cities and villages shall have the general powers enumerated in this section, and the council may provide by ordinance for the exercise and enforcement of the same.   *   *   *
"3.   To prevent injury or annoyance from anything dangerous, offensive, or unwholesome, and to cause any nuisance to be abated.   *   *   *
"18.   To lay off, establish, open, widen, narrow, straighten, extend, keep in order and repair, and to light streets and alleys, public grounds," etc. Also the general provisions authorizing municipalities by proper ordinances, resolutions, etc., to carry these provisions into effect.

Even if this duty shall be deemed to arise out of contract rather than legislative sanction, the result would seem to be the same. I call attention to the case of *Water Co.* v. *Ware*, 16 Wall., 566, the syllabus of which reads as follows:

"Where an incorporated company undertook to lay water pipes in a city agreeing that it would 'protect all persons against damages by reason of excavations made by them in laying pipes, and to be responsible for all damages which may occur by reason of the neglect of their employes on the premises;' *held*, on the company's having let the contract out to a subcontractor, through the negligence of whose servants injury accrued to a person passing over the street, that the company could be properly sued for damages."

The city of St. Paul, desiring to have water pipes laid along the streets of the city, passed an ordinance authorizing the St. Paul Water Co., an incorporated company, so to lay them. But as it was necessary that large excavations of earth should be made along the streets, and considerable blasting of rock below, the ordinance in one of its sections provided as follows:

"The said water company expressly agrees to protect all persons against damages by reason of excavations made by them in the said city, in laying pipes, and to keep the said excavations properly guarded by day and night, and to become responsible for all damages which may occur by reason of the neglect of their employes in the premises, and that the streets and highways in said city shall not be unnecessarily obstructed or incumbered in laying said pipes.

"The water company accepted the ordinance. It did not, however, do any work itself or by its own servants, but made a contract in writing with one Gilfillan to do the work for them. Under this contract, Gilfillan himself superintending the work every day, certain excavations, drillings, and blastings were made in different streets of the city.

While these operations were going on in one of the streets, a certain Ware, driving his horse and wagon in it, was much injured, owing to his horse taking fright at a steam drill in the street, put there to drill the rocks that it was necessary to remove, and suddenly and without notice set in motion. He accordingly sued the company for damages."

The opinion of the court was delivered by Mr. Justice Clifford, and I read a paragraph or two from its conclusions:

"The evidence exhibited in the record shows that the defendants agreed with the municipal authorities to protect all persons against damages by reason of the excavations made by them preparatory to laying the pipes, and to keep the work properly guarded by day and night, and to be responsible for all damages which "may occur by reason of neglect of their employes in the premises;" and that the streets should not be unnecessarily obstructed or incumbered in doing the work. Such an agreement would not acquit the municipality of an obligation, otherwise attaching, to keep the streets safe and convenient for travelers, but it may well be held that a party injured through a defect or want of repair in such a street, occasioned by the neglect or carelessness of such a contractor in doing the work, or of those for whose acts he is responsible, may, at his election, sue the contractor for redress or pursue his remedy against the municipality, as it is clear that the contractor, in case of a recovery against the latter, would be answerable to the municipality as stipulated in his agreement."

Again, reading from page 576:

"Where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not liable; but where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agreed and was authorized to do, the person who employs the contractor and authorizes him to do those acts is equally liable to the injured party.

It will be observed that it is alleged in the case at bar that this permission was obtained by the owner of the premises to place material upon the street at this place in the course of the erection of a building for him; that in pursuance of this permission the contractor placed materials upon the street, which caused the injury to the plaintiff. So that the placing of these materials there was in the line of the performance of his duty under the contract—a thing contemplated by him in the performance of

his contract, a thing authorized by the person who had obtained the permission, and had undertaken and was bound to keep the lights and other guards around such materials or obstructions as would prevent injury to travelers upon the highway. I will read one further sentence from this opinion:

"It would be monstrous," said Lord Campbell, "if a party causing another to do a thing were exempted from liability for the act merely because there was a contract between him and the person immediately causing the act to be done," which may be accepted as correct if applied in a case where the work contracted to be done will necessarily, in its progress, render the street unsafe and inconvenient for public travel. More than one party may be liable in such a case, nor can one who employs another to make such an excavation relieve himself from liability for such damages as those involved in the case before the court by any stipulation with his employee, as both the person who procured the nuisance to be made and the immediate author of it are liable."

Our attention is called to a decision by the district court sitting in Hamilton county that I will not take the time to read from, which seems to support a contrary doctrine. That might have a controlling effect with this court if we had no utterance of our own Supreme Court upon the subject.

I intended to remark upon the reading of the authority of the United States Supreme Court just read from, that while civil liability cannot be imposed by ordinance alone, it may be by contract resulting from the acceptance of privileges conferred by ordinance—the acceptance of privileges with conditions attached to the acceptance, and performance of the work under these privileges.

I call attention to the case of *R. R. Co.* v. *Morey*, 47 O. S., 207, which we think is sufficiently in point to control the decision in this case. I read from the third proposition in the syllabus:

"One who causes work to be done is not liable, ordinarily, for injuries that result from carelessness in its performance by the employes of an independent contractor to whom he has let the work, without reserving to himself any control over the execution of it. But this principle has no application where a resulting injury, instead of being collateral and flowing from the negligent act of the employe alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case the person causing the work to be done will be liable though the negligence is that of an employe of an independent contractor."

The statement of the case is as follows:

"The defendant in error, George A. Morey, brought, in the court of common pleas of Fayette county, an action against The Southern Ohio Railroad Co., plaintiff in error, to recover damages claimed to have been sustained by him on account of himself and horse falling into a ditch that the plaintiff in error had caused to be dug and left unguarded, across Water street, in the town of Washington, in said county, on the night of November 9, 1885.

"The record discloses that the plaintiff in error, at the time of the accident, owned and operated a railroad which ran through said town of

Washington, and occupied part of said Water street with its tracks, and owned and occupied a depot situate on lots owned by it, that were adjacent to said street. That the ditch causing the injury had been dug during the day, the night of which the accident occurred, for the purpose of laying tiling for a drain from the depot above mentioned; that the ditch was dug entirely across that part of said street which was or could be used for travel; that it was from four to six or seven feet deep, about two and one-half feet wide at the top, and about two feet wide at its bottom, and the earth from it thrown out two or three feet high on both sides; that the night was very dark, and the ditch left wholly unguarded. That the defendant in error having no knowledge that the ditch had been dug, and without fault on his part, fell into it, together with his horse, and thereby received the injuries of which he complained and that the ditch was, in fact, dug by a man employed by the firm of R. P. Willis & Son, who did the plumbing work for the depot.

"The main contention between the parties at the trial was whether this plumbing was done under such an independent contract as would exonerate the railroad company from liability for the negligence of the contractor and his immediate servants."

The work in this case was an excavation in the street. We do not see that there is any difference in the principles applicable to nuisance of one kind that would make a street dangerous for travelers and a nuisance of another kind producing a like danger, for instance, an excavation in the street and a pile of dirt and other obstructions in the street. They seem to us to amount to the same thing and that the principles applicable are the same. As to the amount of material in this street in the case at bar, the location of it, etc., of course we are bound upon this hearing to take as true the allegation of the plaintiff's pleading, that there was a large amount of sawdust near to the middle of the street that interfered with public travel. Again quoting the court says on page 213:

The only serious question in the case is presented by charges given or refused by the court.

The court among other things charged the jury as follows:

"If the necessary or probable effect of the performance of the work would be to injure third persons, or create a nuisance, then the defendant is not relieved from liability, because the work was done by a contractor over which it had no control in the mode and manner of doing it."

To this the plaintiff in error excepted.

"The question is here presented whether the owner of real estate, who causes work to be done in relation to it, the probable consequences of the performance of which will be to endanger others or to create a nuisance, can shift from himself all responsibility for these probable consequences by letting the work to an independent contractor over whom he reserves no control? Will a sound public policy permit this to be done? If so, then we may expect the prudent proprietor, when he has work to be done which involves these probable consequences, to provide for its performance by a carefully guarded contract by which he retains no control over it whatever."

The court proceeds to distinguish the case of *Clark* v. *Fry*, 8 O. S., 358, and discusses the principles involved at some length, arriving at the conclusion that in a case like that before the court the plea that the

work was done by an independent contractor would not avail. In support of this a case in 149 Mass. 335 is also cited, which we think tends to support the doctrine.

There are various subsequent utterances by our supreme court upon the subject which are not precisely in point, but which tend to show that the court has approved the doctrine announced in the case from which I have just read.

Judge King calls my attention to the fact that the court in announcing the opinion in 47 O. S., from which I have just read, proceeded to say that the doctrine of *Clark* v. *Fry* would not be extended by the court, and was not the rule to be applied in a case like the one under consideration. In that case, (the court remarks), the record did not disclose that the excavation in question extended so far in the street as to impede public travel, or as to become a nuisance, and that element seemed to be absent from the case.

Our conclusion, then, upon this matter is, that the demurrer to the reply should have been overruled; that the court erred in sustaining this demurrer; and therefore the judgment of the court will be reversed, the cause will be remanded with an order or instructions to the court to overrule the demurrer to this reply.