# DISTRICT OF COLUMBIA *v.* AUKWARD.

MUNICIPAL CORPORATIONS; STREETS AND SIDEWALKS; NEGLIGENCE.

1. While a pedestrian using a public street may not assume that between crossings the street is as smooth and safe as at crossings, he has a right to assume that it is reasonably safe for the use for which it primarily was intended. (Cited *District of Columbia* v. *Boswell*, 6 App. D. C. 402.)

2. It is not contributory negligence as a matter of law for a pedestrian to cross a street at a point which is not a regular crossing, and in an action for damages for personal injuries against a municipality by a woman who was injured while so doing, the injury being caused by her stepping into a depression in the street about 3 inches deep, 18 inches long, and 8 or 10 inches wide, by the side of a ventilating trap, where the plaintiff testified she was not looking down when she stepped into the depression, but there was evidence that other persons had repeatedly passed at the same place without observing it,—it is a question for the jury whether the plaintiff was guilty of contributory negligence. (Citing *Burke* v. *District of Columbia*, 42 App. D. C. 438.)

No. 2899. Submitted February 25, 1916. Decided April 24, 1916.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on verdict, in an action to recover damages for alleged personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment for the plaintiff, Mary A. Aukward, appellee here, in an action for personal injuries

Note.—As to right of pedestrian to assume good condition of street, see notes in 21 L.R.A.(N.S.) 621, and 48 L.R.A.(N.S.) 630.

And as to contributory negligence in leaving traveled track, see notes in 21 L.R.A.(N.S.) 621, and 48 L.R.A.(N.S.) 639.

sustained by a fall at a point in a street outside a regular crossing.

The material facts are as follows: The plaintiff, a lady of sixty-nine years at the time of the accident, was principal of the Peabody School in this city, and lived at 128 D street, S. E. On the morning of the accident she proceeded down D to First street to the house of a friend on the west side of the street, and together they walked north to a grocery store on the corner of First and C streets, the plaintiff waiting while her friend visited the store. Then desiring to take a north-bound car which stopped on the opposite or easterly side of First street, the street they were on, although there was ample time they took the most direct route diagonally across the street towards the point where the car would stop, instead of going a few steps north to the regular crossing at the intersection of First and C streets, then to the east side of First street, then south along First street to a point opposite the stopping place of the car, and thence west to the car door. The diagram here inserted may perhaps aid in explaining the situation:

First street south of C street was paved with granolithic blocks. At a point in First street about 7 feet east of the curb line and about 18 feet south of the C street crossing, was an

iron ventilating trap.   The evidence tended to show that for a period of several months prior to the accident paving blocks on the westerly side of this trap, for the length of 18 inches and extending back from the trap some 8 or 10 inches, had become depressed to a depth of about 3 inches.   In other words, paving blocks on the westerly side of this iron ventilator had settled so that their surface was about 3 inches lower than the surface of the street, including, of course, the surface of the ventilator.   There was evidence that this depression had quite seriously affected automobiles and other vehicles passing over it.   One witness, whose home was adjacent to this place, testified that "people going over it would stumble, and teams passing over it would jostle the drivers if they went over it in a hurry; that some drivers would hold up their teams as they passed over it. It caused a great jolting of the teams, and the people would bounce out of their seats."   The driver of a bread wagon testified that it had caused his horse to stumble seriously upon one occasion.

The plaintiff did not notice this depression—although admitting on cross-examination that had she been looking down at this point she would have seen it—stepped therein, was thrown to the street, and seriously injured. That the evidence warranted a finding of negligence on the part of the District is not questioned, the sole contention here being that plaintiff was guilty of such contributory negligence as to preclude her right to recover.

*Mr. Conrad H. Syme,* Corporation Counsel, and *Mr. Roger J. Whiteford,* Assistant, for the appellant:

1. The plaintiff, under cross-examination, testified *that if she had been looking where she was going she could have seen the hole in the street.*   It is submitted that it was the duty of the plaintiff to look where she was going, in view of the fact that she was crossing a street intended primarily for vehicles, which was paved with a kind of paving that was rough and uneven, and not as smooth as that provided at a street crossing;

that she was crossing a street whereon she knew there were car tracks, and which it was necessary for her to cross before she could arrive at the place to which she was destined, and that in view of all of these circumstances the law rightfully imposes upon her the duty of exercising such a degree of care, at least, that would require some attention to the surface over which she was traveling. *Howes* v. *District of Columbia,* 2 App. D. C. 190.

This court has recognized the necessity for the exercise of a greater degree of care where pedestrians are crossing at a place other than the street crossing. *District of Columbia* v. *Duryee,* 29 App. D. C. 332. Even in the case of sidewalks the plaintiff is under some duty to look where he was going, lest he be guilty of contributory negligence. *District of Columbia* v. *Haller,* 4 App. D. C. 405. If this plaintiff had been looking immediately in front of her, and not "far ahead," as required in the above opinion, she would not have suffered the injury of which she now complains. *Railroad Co.* v. *Gibson,* 97 Ga. 499; *District of Columbia* v. *Boswell,* 6 App. D. C. 407.

The plaintiff was guilty of contributory negligence *per se.* *Heise* v. *Lancaster,* 203 Pa. 260; *Winchester* v. *Carroll,* 99 Va. 727; *Mitchell* v. *Richmond,* 57 S. E. 570; *Dayton* v. *Taylor,* 62 Ohio St. 11; *O'Loughran* v. *Dubuque,* 42 Iowa, 539; *Alline* v. *Le Mars,* 71 Iowa, 554; *Easton* v. *Philadelphia,* 26 Pa. Super. Ct. 517; *Mayer* v. *Hyde,* 11 So. 108; *Raymond* v. *Lowell,* 6 Cush. 524, 53 Am. Dec. 57; *Harwood* v. *Oakham,* 152 Mass. 421; *Groveport* v. *Bradfield,* 2 Ohio C. C. 145; *Brown* v. *Chicago,* 135 Ill. 126; *Kohlhof* v. *Chicago,* 192 Ill. 249; *Barker* v. *Savage,* 45 N. Y. 191.

*Mr. Charles H. Merillat* and *Mr. Alexander Wolf,* for the appellee, in their brief cited:

*Augusta* v. *Tharpe,* 113 Ga. 153; *Bell* v. *Town,* 113 Iowa, 126; *Blood* v. *Tyngsborough,* 103 Mass. 507; *Burke* v. *District of Columbia,* 42 App. D. C. 438; *Capital Traction Co.* v. *Divver,* 33 App. D. C. 332; *Louisville* v. *Johnson,* 24 Ky. L.

Rep.; *Lincoln* v. *Power,* 151 U. S. 441; *Denver* v. *Sherret,* 88 Fed. 226; *Glasgo* v. *Gillenwater,* 113 Ky. 140; *Conger* v. *B. & O.* 31 App. D. C. 139; *Dashields* v. *Moses,* 35 App. D. C. 583; Dillon, Mun. Corp. Sec. 1698; *District of Columbia* v. *Bolling,* 4 App. D. C. 397; *District of Columbia* v. *Boswell,* 6 App. D. C. 402; *District of Columbia* v. *Woodbury,* 136 U. S. 450; *District of Columbia* v. *Harper,* 40 App. D. C. 568; *District of Columbia* v. *Wood,* 41 App. D. C. 101; *District of Columbia* v. *Duryea,* 29 App. D. C. 327; *District of Columbia* v. *Haller,* 4 App. D. C. 405; *District of Columbia* v. *Payne,* 13 App. D. C. 500; *Gardiner* v. *R. R. Co.* 150 U. S. 349; *Gerald* v. *Boston,* 108 Mass. 580; *Grand Trunk* v. *Ives,* 144 U. S. 408; *Gordon* v. *Michigan Cent.* 150 U. S. 349; *Howes* v. *District of Columbia,* 2 App. D. C. 188; *Jones* v. *East Tennessee R. Co.* 128 U. S. 443; *Junction City* v. *Vladen,* 59 Kan. 774; *Kane* v. *Northern Cent.* 128 U. S. 90; *Kelley* v. *Fond du Lac,* 31 Wis. 179; *Kossman* v. *St. Louis,* 153 Mo. 293; *Mosheuvel,* 17 App. D. C. 401, 191 U. S. 247; *Miller* v. *Lewiston Co.* 212 Pa. 593; *McDonald* v. *Bowditch,* 201 Mass. 359; *R. Co.* v. *Golway,* 6 App. D. C. 165; *R. Co.* v. *Power,* 149 U. S. 43; *Raymond* v. *Lowell,* 6 Cush. 524; *Rea* v. *Sioux City,* 28 Iowa, 615; *Sioux City R. Co.* v. *Stout,* 84 U. S. 17; *Stafford* v. *Oskaloosa,* 57 Iowa, 750; *Texas & Pac.* v. *Cox,* 145 U. S. 503; *Thompson* v. *Bridgewater,* 7 Pick. 188; *Wash. Gas Co.* v. *Poore,* 3 App. D. C. 127; *Woodmen* v. *Met. R. Co.* 4 L.R.A. 212.

Mr. Justice Robb delivered the opinion of the Court:

The learned trial justice in his charge to the jury, to which there was no exception, said: "It ·is true that one walking where he has a right to walk, in the public street or on the sidewalk, has a right to assume, unless there is something to indicate to the contrary, that the District has performed its duty in providing a safe place, considering the purpose for which the street or sidewalk was made,—in the case of the sidewalk, if it is safe for people to walk over, and in the case

of the highway, if it is safe for vehicles to pass over. But when a person unnecessarily goes off of the sidewalk at a point not prepared for pedestrians, and undertakes to cross there, then of course the additional duty rests upon him to remember that it is a place prepared for vehicles, and not primarily intended for pedestrians, and the presumption of safety would not extend any further than the use for which the place was built and is supposed to be kept in repair."

Had the driver of an automobile or other vehicle met with an accident because of this defect in the street, clearly it would have been a question for the jury whether he should have seen and avoided it. *Burke* v. *District of Columbia,* 42 App. D. C. 438. We there said that one driving along the city street may assume, when he has no knowledge to the contrary, that the street is in a reasonably safe condition. It necessarily follows that he may act upon this assumption, and give only such heed to the surface of the street as would a reasonably prudent man in the circumstances. The presence of many other vehicles upon the street, especially those motor-driven, the frequency of crossings, and the stopping of street cars to discharge and take on passengers, demand constant watchfulness on the part of the driver of any vehicle. While he may not shut his eyes to obstructions or defects in the street surface, it is apparent that he must rely, to some extent, upon the presumption that the city has performed its duty.

Streets of a city are not exclusively for vehicular traffic, but may be used by pedestrians if due care is exercised. *Moebus* v. *Hermann,* 108 N. Y. 349, 2 Am. St. Rep. 440, 15 N. E. 415, Elliott, Roads & Streets, 622. And a pedestrian rightfully upon the street is entitled to as much protection as the driver of a vehicle. While he may not assume that the street between crossings is as smooth and safe for pedestrians as at crossings, he certainly has a right to assume that it is reasonably safe for the use for which it primarily was intended. *District of Columbia* v. *Boswell,* 6 App. D. C. 402; *Winchester* v. *Carroll,* 99 Va. 727, 40 S. E. 37; *Kohlhof* v. *Chicago,*

192 Ill. 249, 85 Am. St. Rep. 335, 61 N. E. 446; Dill. Mun. Corp. sec. 1698. Indeed, in getting on and off street cars passengers must walk in the street at points other than crossings, for it is conceded that such cars are required to stop before a crossing is reached.

In the present case, the car was approximately 40 feet in length, and was to stop several feet south of the C street crossing. Therefore, had plaintiff approached the car from the east side of First street instead of from the west, she would have been considerably farther south than the point where she was injured. Certainly it cannot be said that she was guilty of contributory negligence merely because she attempted to cross where she did. *Denver* v. *Sherret,* 31 C. C. A. 499, 60 U. S. App. 104, 88 Fed. 226, 5 Am. Neg. Rep. 520; *Woodman* v. *Metropolitan R. Co.* 149 Mass. 335, 4 L.R.A. 213, 14 Am. St. Rep. 427, 21 N. E. 482, 12 Am. Neg. Cas. 80; *Miller* v. *Lewiston Electric Light, Heat & P. Co.* 212 Pa. 593, 62 Atl. 32; *Bell* v. *Clarion,* 113 Iowa, 126, 84 N. W. 962. In the *Woodman Case,* Justice Holmes, now of the Supreme Court of the United States, said: "It is suggested that (plaintiff) was not crossing at a regular crossing. But his rights were not changed by a slight change in the pavement. He had a right to cross where he chose, if the jury thought he used due care."

We therefore are back to the question whether, considering that appellee had a right to assume that this street was in a reasonably safe condition for vehicular traffic to which it was open, her failure to observe the depression into which she stepped constituted contributory negligence, as matter of law. As above suggested, it clearly would not in the case of the driver of a vehicle. It must be noted that this was a depression, and not an obstruction. The settling of two or three of these blocks to the extent of 3 inches would make comparatively little difference in the surface *appearance* of the street. The upper surface of the depressed blocks would blend with the surface of those not depressed, so that one having no knowledge of the situation would not be likely to notice them unless gazing directly at them. There is evidence for the appellant to the effect that

several people had repeatedly passed this point without observing the depression, and it was developed during the cross-examination of the friend of appellee, who was with her at the time of the accident, that although she (the friend) had crossed the street at practically the same place every morning, she had not noticed it. Appellee's admission, on cross-examination, that she was not looking down when she stepped into the depression, while tending to show lack of care on her part, was not necessarily conclusive of the question. She was not required, nor is any pedestrian required, constantly to look down and thereby assume the danger of being run over.

In view, therefore, of the uncontested fact that this depression was of such a character as to render the street unsafe for vehicular traffic, and that it was not readily observable by one having no knowledge of its existence, we agree with the trial court that it was for the jury to say whether appellee exercised that degree of care required of her in the circumstances.

The judgment is affirmed.                    *Affirmed.*