George W. Washburn *vs.* Reuben D. Gilman.

*Nuisance—maintained for injury by drift-stuff.*

The plaintiff brought this action to recover for injury to his interval land by the drifting upon it, by a freshet, of the refuse cast out of the defendant's mill: *held*, that the defendant, in operating his mill, should have guarded against freshets, always liable to occur in our rivers.

These deposits by the waters of a navigable stream were such a nuisance as to entitle the plaintiff suffering special damage, to maintain an action for the injury caused thereby.

ON EXCEPTIONS.

CASE for a nuisance occasioned by casting out of the defendant's saw-mill and into the Piscataquis river refuse stuff, which was floated by a freshet in the spring of 1871, upon the interval land of the plaintiff, situated below the mill, upon the same stream, so that great injury was thereby caused and considerable expense in removing the same.

The defendant pleaded the general issue, with a brief statement of a lawful right to cast his refuse stuff into the river, by a prescription in himself and those under whom he claimed by forty years uninterrupted user; also, by the custom of the country for all the mill-owners so to do for fifty years uninterruptedly; and he denied that this stuff was thrown into the river by his authority or that it came to the plaintiff's land from his mills, but claimed that it was from other mills.

The case as made up, stated substantially these facts: "Upon the thirteenth day of March, 1871, the defendant owned and used for manufacturing lumber a saw mill and shingle mill, situated on the Piscataquis river in Foxcroft village. He so used the saw mill through the previous winter, and the shingle mill from January 18, 1871. He had recently built the shingle mill, and also a clapboard mill, which was not so used until sometime after March 13, 1871. He had for several years previous so owned and used the saw mill and a shingle mill and clapboard mill, so situated, but the shingle mill and clapboard mill had become dilapidated and were replaced by new mills built as above stated.

The plaintiff owned on March 13, 1871, and had for many years previously owned, a farm situated on said river below the mills of the defendant, in the town of Dover.

It was in proof that, on March 13, 1871, there was a very high freshet in the river which broke up the ice below the dam just above said mills, and carried it down to an island in the river; that the ice jammed on this island and flowed back on plaintiff's farm, covering some seven acres of his interval land adjoining the river with ice, and a great quantity of drift wood, edgings,

bark, waste stuff, saw dust, hearts, butts, shingle stuff, and some logs; that this stuff appeared as new or recently cut out.

The plaintiff proved that there was a large pile of shingle-edgings and a large pile of saw dust at defendant's mills, which had been thrown out on the ice during the preceding winter. And further plaintiff introduced evidence tending to show that defendant had, in the course of the winter, thrown out from his mill upon the ice some slabs, butts, hearts, clippings, and other waste stuff from his mills, which were carried off in the freshet.

The plaintiff introduced testimony tending to show that these piles and other things were mainly carried off by the freshet on that day, and that previous freshets had left nothing but earth upon his farm.

It was testified to that during the forty-five years next before the bringing of this action a saw mill had been upon this same spot and for most of the time for thirty years clapboard and shingle mills had been operated where the defendant had his; and that the owners or occupants had always thrown their waste stuff into the river, till it had become valuable for wood, and this had been the custom at the mills upon the river above those of the defendant.

The plaintiff said he and his men worked half a month and used his horse and cart eleven days removing the stuff deposited upon his land by this freshet; that he lost a ton and a half of hay that year and two tons the next in consequence of it, and that it ruined three acres of his interval."

Upon these facts the judge instructed the jury, that "if the defendant threw, or cast into the Piscataquis river, or deposited upon the ice, edgings, saw dust, slabs, butts, hearts, clippings or other waste stuff from his mills, leaving them to be floated away by the water of the river without any care or oversight, and if any of such stuff was carried by the action of the water of the river on the plaintiff's land, and there deposited and left, and the plaintiff was thereby injured, he might recover damages of defendant."

He further instructed the jury that "the defendant is liable only

for the damages occasioned by the stuff which came from his mills to and upon the plaintiff's land, and there remained. If it was mixed with like waste and stuff from other mills or places, and these together caused the injury, they must apportion the actual damage and charge the defendant only with the amount of damage they are satisfied was caused by the stuff from his mills. They must not charge him for injury not found to have been occasioned by defendant's stuff.

The defendant requested the court to instruct the jury,

I. That defendant has the right to cast into the Piscataquis river the slabs, butts, hearts, sawdust, edgings and other waste stuff made by his mills, and if by the great freshet of March 13, 1871, and the jamming of the ice on the island below plaintiff's farm, the same or any part of it was carried on the plaintiff's farm, and injured it, the defendant is not liable for the injury.

This instruction the court declined to give except as given in the first above instructions.

II. That if the jury find that two causes concurred to produce the injury to the plaintiff's farm, and that one cause was the waste stuff which defendant cast from his mills into the river, and the other cause was the great freshet of March 13, 1871, then the defendant is not liable for the injury.

The court refused to give this instruction, and further instructed the jury that, "if the great freshet carried the stuff on plaintiff's land and the defendant is otherwise liable, the fact that it was thus carried on by the freshet would not exonerate him."

III. That if the jury find that defendant cast such waste stuff into the river, and the water carried it, mixed up with other similar waste stuff cast into the river by other persons from mills on the river above defendant's mills on the plaintiff's farm, thereby injuring it, still, if the jury were unable from the testimony to estimate and determine the amount of damages done thereto by the waste stuff of defendant's alone, the law does not authorize the jury to render a verdict against him for more than nominal damages. This the court refused to give except as given in the instructions above.

The verdict was for the plaintiff for his damages, and the defendant excepted.

*A Sanborn* and *Lebroke & Pratt* for the defendant.

The defendant has all the rights of mill owners upon public rivers, including the use of it for the purpose of operating his mills, in the usual and reasonable manner. *Brown* v. *Chadbourne*, 31 Maine, 26; *Pitts* v. *Lancaster*, 13 Metc., 157; *Thurber* v. *Martin*, 2 Gray, 394; *Chandler* v. *Howland*, 7 Gray, 350.

Reasonable use is that adopted by men of ordinary prudence in that business. *Shrewsbury* v. *Smith*, 12 Cush., 181; *Sullivan* v. *Scripture*, 3 Allen, 564; *Snow* v. *Parsons*, 28 Vermont, 464.

Therefore the defendant had the right to do as all mill owners did in this respect. 28 Vermont, 464; *Jacobs* v. *Allard*, 42 Vermont, 303.

Such right as the defendant claimed may be acquired by prescription; one of the most common instances being that of obstructing a stream and flowing back its waters. *Bolivar Co.* v. *Neponset Co.*, 16 Pick., 241; *Stein* v. *Burden*, 24 Ala., 130; *Watkins* v. *Peck*, 13 N. H., 360; *Stackpole* v. *Curtis*, 32 Maine, 383; *Harrison* v. *Young*, 9 Ga., 359; Washb. on Easements, 243, 287 and cases there cited; *Moore* v. *Webb*, 1 C. B. (N. S.), 673; *Jones* v. *Crow*, 32 Penn. St. R., 398; *Bear River Co.* v. *York*, 8 Cal., 327; *Hill* v. *King*, Id., 336. And the mill need not stand upon the same spot all the time. *Shumway* v. *Simons*, 1 Vermont, 53.

The defence could rely upon the custom of the country. *Carlyon* v. *Lovering*, 40 Eng. Law & Eq., 448.

*Josiah Crosby* and *Henry Hudson* for the plaintiff.

The defendant had no right to obstruct a public highway with his drift stuff, nor can that right be acquired by prescription. Angell on Highways, §§ 225–229; 31 Maine, 9; *Knox* v. *Chaloner*, 42 Maine, 150; *Cole* v. *Sprowl*, 35 Maine, 161; *Veazie* v. *Dwinel*, 50 Maine, 490; *Dwinel* v. *Veazie*, 44 Maine, 167; *Davis* v. *Winslow*, 51 Maine, 264; *Gerrish* v. *Brown*, Id., 256.

APPLETON, C. J.    The defendant is a mill owner on the Piscata-
quis river.    The plaintiff brings this action to recover damages
by reason of the butts, edgings, saw dust, &c., thrown by the de-
fendant into this river, which stuff floating upon his land injured
the grass upon his meadows and was removed therefrom at great
expense.

The defendant requested the court to instruct the jury "that
the defendant has the right to cast into the Piscataquis river the
slabs, hearts, edgings, saw dust and other waste stuff made by his
mills, and if by the great freshet of March 13, 1871, and the jam-
ming of the ice on the island below the plaintiff's land, the same
or any of it was carried on the plaintiff's farm and injured it, the
defendant is not liable for the injury."

This instruction the court declined to give, but instructed the
jury that, "if the defendant threw or cast into the Piscataquis
river, or deposited upon the ice, edgings, saw dust, slabs, butts,
hearts, clippings or other waste stuff from his mills, leaving the
same to be floated away without any care or oversight; and if
any such stuff was carried by the action of the water of the river
to and upon the plaintiff's land and there deposited and left, and
the plaintiff was thereby injured, he may recover his damages
of the defendant."    When there is a dam built on a stream subject
to great freshets, it is not enough that it is sufficient to resist ordi-
nary floods, but great freshets should also be guarded against.
*The Mayor, &c., of New York*, v. *Bailey*, 2 Denio, 433.    The
instruction given was in accordance with law, and gave the de-
fendant all to which he was entitled.

Freshets and ice periodically occur in the ordinary course of
nature in our rivers.    Their existence is no excuse for expos-
ing refuse materials to their action, when the consequences of
so exposing them are well known to all.    Indeed, that they were
so exposed "without care or oversight" the jury must have found,
and the fact so found is the very basis of the plaintiff's complaint.

From the decision in *Simpson* v. *Seavey*, 8 Maine, 138, to the
present time, it has been held that mill owners are responsible for

damages arising from throwing drift and waste stuff in the streams, (if navigable) upon which their mills are erected. In *Gerrish* v. *Brown*, 51 Maine, 256, it was held that if a person obstruct a stream, which is by law a public highway, by casting therein waste materials, filth or trash, or by depositing materials of any description, except as connected with the reasonable use of said stream or highway, or by direct authority of law, he does it at his peril, and is guilty of causing a public nuisance. The defendant was not in the reasonable use of the river, if "without care or oversight" he left the drift stuff from his mill so that by the ordinary forces of nature it would be carried on the land of the riparian proprietors below him to their injury. If without care, there could not be reasonable care. If the counsel had desired a more explicit ruling and that the question of reasonable use should have been distinctly submitted to the jury, he should have so requested the court.

The ground of complaint in the present case is not the interference with the navigation of the river but damage done to the plaintiff's land by the drift stuff floated by the rise of waters upon it. It is a private and special nuisance, for the consequences of which he seeks compensation. "It is a principle of the common law," observes Huston, J., in *Howell* v. *McCoy*, 3 Rawle, 256, "that the erection of anything in the upper part of a stream of water, which poisons, corrupts, or renders it offensive and unwholesome, is actionable. And this principle not only stands with reason but is supported by unquestionable authority, ancient and modern. . . The erection of a tan-yard comes within the operation of the same principles provided it has the effect of which the plaintiffs complain, corrupting and rendering unwholesome the water in the stream below, used for distillation or for culinary or domestic purposes. The general rule of law is that every man has a right to have the advantage of a flow of water, on his own land, without diminution or alteration in quantity or quality. Nor are we to be understood as saying, that there can be no diminution or alteration whatever, as that would be denying a valuable use of the water. The use of it must be such as not to be injurious to

the other proprietors." In *Crosby* v. *Bessey*, 49 Maine, 539, which was an action on the case for injury to the plaintiff's land by rea- son of the deposit thereon of bark from the defendant's tannery, by the natural flow of water, the court instructed the jury, that unless the defendant had acquired by grant or prescription the right so to deposit, that by the natural action of the water, it would be carried upon the plaintiff's land below, to his damage ; and that if he did thus deposit it without having acquired such right, and it was carried on to the plaintiff's land to his damage, the plaintiff was entitled to recover, and the correctness of this ruling was affirmed. The same principle applies, whether the in- jury is by fouling the water or diminishing the productive powers of the soil. "I take the law to be," observes Blackburn, J., in *Hodgkinson* v. *Enna*, 116 E. C. L., 229, "as stated in *Tenant* v. *Goldwin*, 2 Ld. Raym., 1089; Salk., 21, 360; 6 Mod., 311 ; Holt, 500 ; that you must not injure the property of your neighbor, and consequently, if filth is created on any man's land, then in the quaint language of the report in Salk., 361, "he whose dirt it is, must keep it that it may not trespass." In *Hay* v. *The Cohoes Co.*, 2 Comst., 162, Gardner, J., states the law as follows: "In this case, the plaintiff was in the lawful possession and use of his property. The land was his, and as against the defendant, by an absolute right from the centre *usque ad cœlum*. The defendants could not directly infringe that right by any means or for any purpose. They could not pollute the air upon the plaintiff's premises, (*Morley* v. *Pragnell*, Cro. Car., 510,); nor abstract any portion of the soil; (Rol. Abr., 565, note; 12 Mass., 221); nor cast anything upon the land, (*Lambert* v. *Bessy*, Sir T. Ray- mond, 421), by any act of their agents, neglect or otherwise. For this would violate the right of eminent domain. Subject to this qualification, the defendants were at liberty to use their land in a reasonable manner according to their pleasure."

The second requested instruction was properly refused. The defendant is not to be held responsible for the freshet, but as freshets are of frequent occurrence, he is bound to know that fact

equally as any other fact occurring in the course of nature, and he is liable for negligently leaving his drift stuff so that the lands of the riparian proprietors below are injured whenever they do occur.

The defendant is liable for damages arising from his own wrongful or negligent acts;—not for those arising from the negligent acts of others. Such was the instruction given. The difficulty may be great of accurately proportioning and assessing the damages done by the defendant, but that difficulty the defendant would have avoided had he taken due care that no occasion should arise requiring such assessment of damages.

The question of prescriptive right does not arise. There is no full report of the evidence, so that we cannot say whether the prescription was established or not. There was no ruling in relation to the law of prescription either given or requested. There were no erroneous instructions on this subject, for there were none whatever given. If the defendant wished to present that question, he should have asked for such rulings as he deemed applicable.

*Exceptions overruled.*

DICKERSON, BARROWS, DANFORTH and PETERS, JJ., concurred. WALTON, J., did not concur.