(75 Hun, 479.)

MUNDY v. NEW YORK, L. E. & W. R. CO.

(Supreme Court, General Term, Fourth Department.   February 15, 1894.)

1. WATERS—OBSTRUCTION BY EMBANKMENT—EXTRAORDINARY FLOOD.
   A flood will not be held, as a matter of law, to have been so extraordinary as to relieve defendant railroad company from liability for the overflow of plaintiff's land because the culvert in defendant's embankment was insufficient to carry off all the water, where it appears that several similar floods had occurred in previous years, though none was as great as the one in question.

2. SAME—RIGHT TO CONSTRUCT EMBANKMENT.
   The mere fact that a railroad embankment was constructed on the land of the company does not limit its liability for interrupting the flow of surface water to such interruption alone as may result from negligence in the construction of the embankment.

Appeal from circuit court, Chemung county.

Action by Nicholas S. Mundy against the New York, Lake Erie & Western Railroad Company. From a judgment entered on a verdict in favor of plaintiff for $1,400, and from an order denying a motion for a new trial on a case and exceptions, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

E. C. Sprague and D. C. Robinson, for appellant.

Frederick Collin, for respondent.

MERWIN, J.   This action is brought to recover damages sustained by the plaintiff by reason of a flood occurring on the 1st day of June, 1889. At that date, and for many years prior thereto, the plaintiff owned a farm situated on the northerly side of Chemung river, in the town of Big Flats, in the county of Chemung. This farm extended from the river northerly across the valley a distance of about a mile. Through the farm, and along the valley, and some distance from the river, the railroad of the defendant passed in a direction easterly and westerly. The track was laid upon an embankment that was above the surface of the ground, and extended, substantially straight, westerly to East Corning station, a distance from plaintiff's farm of about a mile and a half. The general direction of the river in that locality was from the west easterly. At East Corning station it came from the southwest, and ran near to the railroad embankment. It there made a sharp curve to the east and south, and thence it ran easterly beyond plaintiff's farm. The railroad was originally constructed by the New York & Erie Railroad Company, in 1849. In 1861 it passed into the hands of the Erie Railway Company, and in or about April, 1878, the defendant became the owner.

In the complaint it is alleged that the embankment which the defendant maintained upon its lands in the vicinity of the farm of

plaintiff was an obstruction to the course of the waters flowing naturally in and from the Chemung river in times of high water or freshets; that the Chemung river is, and always has been, subject to freshets and to rise in the waters in the vicinity of plaintiff's farm, and prior to the building of such embankment such waters passed west and north of plaintiff's farm; that some distance west of plaintiff's farm the predecessors of defendant placed in the embankment a narrow and insufficient culvert, which was wholly insufficient for the passage of the waters of the river in times of floods or freshets, and that this was maintained by the defendant with notice that it was insufficient, and that by reason thereof the waters would be liable to pass along down on the southerly side of the embankment to the plaintiff's farm and to his injury; that in June, 1889, at the time of a rise and freshet in the waters of the river, the waters of the river overflowed its banks, and came against the embankment, and then, by reason of the embankment and the insufficiency of the culvert, were turned from their natural course, and came down on the southerly side of the railroad to the plaintiff's farm, injuring the farm and the personal property thereon to the extent of $1,400; that prior to this time the plaintiff notified the defendant that the embankment and culvert were a nuisance, and liable, in time of floods, to cause him great injury. The defendant, in its answer, among other things, denied the insufficiency of the culvert, and alleged that the railroad was constructed and is maintained in a careful, skillful, and proper manner.

From the evidence it appears that about a mile westerly of the plaintiff's farm the embankment of the railroad passed over a considerable depression in the natural surface of the ground. This extended several hundred feet, the height of the embankment above the surface ranging from 10 to 4 or 5 feet. In the embankment over this depression there was a culvert 74 feet wide, with a pier in the center. This depression started at the bank of the river, near the station, at the point where the river came up and curved to the east and south. It was at the river about 40 rods wide, and extended beyond the railroad embankment northeasterly. The culvert was placed at right angles to the embankment, so that the waters as they came down the depression or channel were required to turn northwardly in order to pass through. This depression was described by several witnesses as being the flood channel or water course with well-defined banks, which at times of floods would take the overflow of the river at the curve, and carry it northeasterly beyond the locality of the railroad embankment, and thence eastwardly until it reached Big Flats or Gardner's creek, and thence passed to the river below the plaintiff's farm. The overflow at times was said to constitute a good-sized river. At the place on the river bank where this flood channel started, for the purpose apparently of stopping to some extent the overflow at that point, a dyke or embankment along the bank of the river for about 50 rods had been constructed in 1851 by the predecessor of defendant, and another one in 1866. This, in 1886,

had become dilapidated, and at that time it was that the plaintiff notified the officers of the defendant that with the dyke in that condition the culvert in the railroad embankment would not in case of flood carry off the water, but that it would be thrown by the embankment onto the lands on the south side of the track, and pass on down to the farm of plaintiff. It had done so to some extent at a flood in 1865, and the defendant was so informed. The flood on June 1, 1889, was an unusual one. There had been similar floods in 1865 and in 1833, but not so large. There is no question ·about the plaintiff's property being in fact flooded and injured, and the question is whether the defendant is responsible for the injury.

The plaintiff, at the trial, claimed and gave evidence tending to show that the waters that came down upon and injured him came from the Chemung river at the curve where the dike had been placed, and then passed down in the flood channel to the railroad embankment, where, by reason of the inadequacy of the culvert in position and size to afford passageway, they were turned eastwardly, and along the south side of the railroad, and passed down to plaintiff's farm, and that, if the passageway at the culvert had been adequate, the waters would have passed off to the north and east, and his injury been avoided. The defendant claimed and gave evidence tending to show that the waters that injured plaintiff did not come from the river at the dike, and were not cast upon the plaintiff by means of the embankment or want of passageway at the culvert, but were waters that flowed over onto plaintiff from other portions of the river, and were waters that were set back by reason of the waters of the river being dammed up at a gorge about three miles below; and that the flood was so high that the plaintiff would have been overflowed just as much had there been no embankment at all over the flood channel at the culvert. Whether the claim of the plaintiff or that of the defendant was correct was, upon the evidence, a question of fact, and, in effect, was found in favor of the plaintiff. The evidence warranted the finding.

The defendant, however, claims that upon the undisputed evidence the flood was so extraordinary that it should be said as matter of law that the defendant was not liable. In Mayor, etc., v. Bailey, 2 Denio, 433, 441, it was said by the chancellor that a party constructing a dam should construct it in such a manner as to resist such extraordinary floods as might have been reasonably expected occasionally to occur. This rule was approved in Gray v. Harris, 107 Mass. 492, and it was there held that it was a question for the jury whether a flood of an extraordinary character was such that it should have been anticipated and provided against. A like view is taken as applicable to a case like the present one in Railway Co. v. Ramey, 139 Ill. 9, 28 N. E. 1087; Railway Co. v. Thillman, 143 Ill. 127, 32 N. E. 529; Railway Co. v. Pomeroy, 67 Tex. 498, 3 S. W. 722; Borchardt v. Boom Co., 54 Wis. 107, 11 N. W. 440. In Hartshorn v. Chaddock, 135 N. Y. 116, 120, 31 N. E. 997, a recovery was sustained for damages from a flood occurring at the

same date as in the present case, although the defendant claimed it was so extraordinary and unusual as to be deemed an act of God; it appearing that, though the freshet was unusual with respect to the volume of water, yet that similar ones, but of less power, have occurred in the past, and are liable to occur in the future. The flood of 1889 was higher than ever before, but similar ones had occurred in 1833 and in 1865, and numerous others not so large. It was shown that the river, for many years prior to 1889, had been subject to sudden variations and heavy rises, and there had been a steady increase in the floods, and they rose quicker in later years than formerly. We think it should not be held that the flood was so extraordinary that the defendant was relieved from all liability.

It is further claimed by the defendant that it was authorized by law to construct its road upon its own land, and is not liable, under the rule laid down in Moyer v. Railroad Co., 88 N. Y. 351. In that case damages had been awarded to the plaintiff as having been caused by the raising of the bed of defendant's road. It was said that there was no proof that that cause contributed in any way to the damage; that the defendant was authorized by law to construct its road upon its own land, and, if it constructed it in a skillful and proper manner, it could not be made responsible to persons receiving incidental or consequential damages; that there was no allegation or proof that it was unskillfully or improperly done, but it was found that the embankment was built in a workmanlike and skillful manner; and the case of Bellinger v. Railroad Co., 23 N. Y. 47, was referred to as sustaining the position that the defendant was not liable for consequential damages to any persons caused by the necessary and proper elevation of its roadbed, not in a channel of a stream, but on its own land. In the Bellinger Case, which related to the same railroad as the Moyer Case, it was said that the defendant was liable only on the basis of negligence. The Bellinger Case was considered in the case of Cogswell v. Railroad Co., 103 N. Y. 10, 8 N. E. 537, and it is there said that the ruling in the Bellinger Case was based on the fact that the company was authorized by statute to construct its road across the creek at the point where it was located, and that it, therefore, was liable only for such consequences as were attributable to a failure to exercise due care and skill in executing the statute authority. The Cogswell Case was an action for damages for a nuisance in the maintenance of an engine house, and it was held to be no defense that it was necessary for defendant to have its engine house located where it was, or that in the management thereof it exercised all practicable care. The rule was laid down that the statutory sanction which will justify an injury to private property must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury; that, where the terms of a statute giving authority to a railroad corporation are not imperative, but permissive, this does not confer license to commit nuisance, although

what is contemplated by the statute cannot be done without. In Mortin v. Mayor, etc., 140 N. Y. 207, 35 N. E. 490, a similar view is taken. In Booth v. Railroad Co., 140 N. Y. 272, 35 N. E. 592, it is said to be now the settled doctrine in this state that the powers granted to railroad corporations are to be construed as privileges conferred, but upon the understanding that they shall be exercised in strict conformity to private rights, and under the same responsibility as though the acts done in execution of such powers were done by an individual. In the present case no statute authority is shown to relieve the defendant from the consequences of a nuisance, if one in fact existed, or to require the plaintiff to base his action on negligence simply. In the absence of such authority, the ordinary rule of liability would apply. See Ang. Water Courses, (6th Ed.) § 331a; Campbell v. Seaman, 63 N. Y. 577; People v. New York Cent. & H. R. R. Co., 74 N. Y. 302; Brown v. Railroad Co., 12 N. Y. 486. The complaint alleges an obstruction by defendant of the natural course of the water, and the insufficiency of the culvert, by means of which the water was thrown upon plaintiff's property, to his injury. A nuisance is, in substance, alleged, and the evidence warranted the finding that one existed. In the light of the later cases, we fail to see how the Moyer Case helps the defendant. It is suggested by the defendant's counsel that the court at the trial turned the action substantially into one of negligence. The rulings of the court, however, on this subject were not objected to by the defendant, and there appears no good reason for defendant to complain in that regard.

It is further claimed that the court erred in submitting to the jury the question whether the damage would not have occurred if the flood had not been of extraordinary character. There were some expressions in the main charge to that effect, but it is doubtful whether there is any exception sufficiently definite to raise the question. Besides, the charge in that respect was subsequently modified. At the close of the charge, and after the disposition of some requests, the counsel for defendant excepted "to that portion of the instruction of the court which states that if the flood was extraordinary, and caused the injury, the jury might still find for the defendant, notwithstanding the flood was of an extraordinary character." To this the court replied, addressing the jury: "If you first find that the defendant was negligent, and that such negligence caused the injury, and then find that the injury would have happened by such waters as might reasonably be expected, then the fact that the flood was extraordinary will not defeat the plaintiff's right of action." To this the defendant excepted. The defendant's counsel then said: "The court stated to the jury that if this had been an ordinary flood, and caused the injury, the defendant might be liable, if they could predicate negligence upon it; and we except to that portion of the charge; the point we except to being that, the flood being extraordinary, they have not the right to consider it as an ordinary one, for the purpose of imposing liability upon the defendant." To this the court replied that what he meant by that was that, if this flood was one which, in

the judgment of the jury, the defendant, in the exercise of reasonable care, should have anticipated, then, if the injury was caused by the negligence of the defendant, it was liable. No exception to this was taken. The court had previously stated very distinctly what, in his judgment, was the measure of the duty upon the defendant. At the close of the plaintiff's evidence, and after denying the motion for nonsuit, the court held that the defendant has no other duty than to provide a sufficient water way to take away the water that might reasonably be expected. This the defendant did not except to, and it has no good reason to complain of the rule. The same rule was repeated in the charge, and the jury were told that if, in this respect, the defendant failed to perform its duty, and such failure caused the injury, the fact that the flood was extraordinary would not relieve the defendant. In this there was no error prejudicial to defendant's rights. It would, at most, be the case of an injury arising without fault of plaintiff from two causes, for one of which the defendant was responsible, and therefore liable for the injury. Phillips v. Railroad Co., 127 N. Y. 657, 27 N. E. 978. The evidence warranted the jury in finding that the injury was wholly or partly the result of the negligence of defendant, and therefore the rule laid down in Grant v. Railroad Co., 133 N. Y. 657, 31 N. E. 220, and kindred cases, cited by defendant's counsel, that a verdict must be based on something more than speculation, does not apply. In some cases it has been held that an apportionment of damages would be made. Washburne v. Gilman, 64 Me. 163; Railway Co. v. Hoag, 90 Ill. 339; Nitro-Phosphate & O. Chemical Manure Co. v. London & St. K. Docks Co., 9 Ch. Div. 503. No point, however, as to this was made at the trial, and it is not necessary here to consider it.

Our attention is called to a number of exceptions to rulings upon evidence. We, however, find no error prejudicial to the rights of the defendant. No point is made here on the subject of notice to the company. It would seem that notice to the division superintendent of the company that had charge of the road in the locality in question should be deemed to be notice to the company. Brayton v. Railroad Co., (Sup.) 25 N. Y. Supp. 264; Coal Co. v. Hood, 77 Ill. 68; Fulton Bank v. New York & Sharon Canal Co., 4 Paige, 137. The foregoing considerations lead to an affirmance of the judgment.

Judgment and order affirmed, with costs. All concur.