DEMING v. TERMINAL RAILWAY OF BUFFALO et al.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. RAILROADS—NEGLIGENCE OF INDEPENDENT CONTRACTOR—LIABILITY—JOINT TORT FEASORS.

Plaintiff was injured by the upsetting of a carriage, caused by an embankment from four to seven feet high, which had been thrown up in the public highway by the defendant contractors under a contract with the defendant railway company, preparatory to building an elevated roadway over the defendant company's track. On the night of the accident there was no light to warn travelers of the presence of the embankment. The supreme court had authorized the railroad company to build the roadway, and also ordered the company to comply with the requirements of General Railroad Law, § 11, which authorizes railroad companies to excavate, fill in, or change the grade of a highway when necessary to carry its line across the roadway. *Held*, that the defendant railroad company was liable for the injury, as a joint tort feasor, and could not escape liability under the rule that exempts a party from damages for the negligent act or omission of an independent contractor, who has undertaken work for the benefit and at the instance of the party with whom he contracts; since the railroad company, having interfered with the highway under the permission of a statute, had imposed on it the implied obligation to protect the public from accidents by reason of such interference.

2. SAME—EXCESSIVE DAMAGES.

Where plaintiff was thrown from a carriage, and seriously injured, by reason of which she was confined to her bed for many weeks, and used crutches for 3 months after the accident, and 18 months thereafter had not fully recovered, and probably never would be completely restored to health, a verdict of $8,000 was not excessive.

3. INSTRUCTIONS—CO-DEFENDANTS.

Where a requested instruction related wholly to the respective rights of the co-defendants, and had no bearing on the rights of the plaintiff, a judgment in favor of the plaintiff will not be reversed because of the refusal to give such instruction.

Appeal from trial term, Erie county.

Action by Mary D. Deming against the Terminal Railway of Buffalo and others. From a judgment in favor of plaintiff and from an order denying a new trial, defendants appeal. Affirmed.

The appellant the Terminal Railway of Buffalo is a corporation duly organized under the laws of this state, its purpose being to form a connecting link between the Lake Shore & Michigan Southern and the New York Central & Hudson River Railroads. In 1897 it was engaged in constructing the line of its road from Depew to Blasdell, in the county of Erie, a distance of about 11 miles, and to that end had entered into a contract with the appellants Smith & Lally, by the terms of which that firm was to perform the entire work of construction in accordance with the plans and specifications annexed to and made a part of the contract. These plans required that all highways intersected by the proposed line of road should be carried either over or under the railway, and among such highways was one known as the "White's Corners Road," which runs north and south, and is an important thoroughfare, extending from the city of Buffalo to the village of Hamburg. At the point of intersection the railroad and highway run at right angles, and on the 29th day of June, 1897, an order was granted by the supreme court permitting the railway to construct its road across the highway at this point upon condition that it should comply with the statute, and restore the highway to such state as not to unnecessarily impair its usefulness. In virtue of the license thus granted, the railroad company proceeded to make the crossing in accordance with certain plans and specifications, which required that the highway should be elevated 8 feet and 5 inches above its original grade; that the railroad tracks should be depressed about 12 feet below the original grade; and that the highway should then be carried across the tracks by means of an overhead bridge. On the 7th day of September, 1897, one Herrick, of the firm of Herrick & Hartman, to whom Smith & Lally claim to have sublet this portion of the work, started to construct the northerly approach to the proposed crossing, and in the course of his operations removed the earth from the west to the east side of the highway, in consequence of which an embankment was soon formed which covered a little over one-half of the highway for a distance of about 600 feet north of the proposed crossing. This embankment, which extended up to within 50 or 100 feet of the temporary track, was about 12 feet wide on top, the side sloping gradually, and its maximum height being from 4 to 7 feet. When completed, it was designed to serve as the roadbed or northerly approach to the bridge over the tracks. The highway at this point was 4 rods wide, and the presence of the embankment left a space about 30 feet in width upon the west side thereof for the passage of teams, but only about 12 or 15 feet of this space was used by the traveling public. On the afternoon of September 16, 1897, the plaintiff and her husband, in company with some 10 or 12 other people, started from Buffalo in a four-seated drag to attend a fair at Hamburg. The drag was drawn by four horses, and was in charge of a competent and experienced driver. The party arrived at Hamburg by the Lake Shore road between 3 and 4 o'clock, and remained there until about 9 o'clock in the evening, when they started to return to Buffalo by the White's Corners road. The night was dark and rainy, and there were no lights upon the drag, and none upon or in the vicinity of the embankment. The drag reached the crossing at about 11 o'clock, and the driver, not knowing of the existence of the embankment, drove directly ahead, instead of bearing off to the left, as should have been done in order to avoid the embankment. As a consequence, when about 100 feet north of the crossing, the wagon struck the embankment, and tipped over. The plaintiff, who was sitting on the back seat, was thrown to the ground, and severely injured, and it is to recover damages for such injuries that this action is brought. Originally, the town of Hamburg was one of the parties defendant, but upon the trial the complaint was dismissed as to it, and no appeal has been taken from the order of dismissal.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

Maurice C. Spratt, for appellant railway.
J. McC. Mitchell, for appellants Smith & Lally.
Clarence M. Bushnell, for respondent.

ADAMS, P. J. Upon the undisputed facts of this case it is clear that the placing of the embankment in question in the traveled part of a public highway, over which hundreds of teams were passing daily, without taking the slightest precaution to warn or protect travelers who might have occasion to approach it on a dark night, was an act of gross and inexcusable negligence. Indeed, so patent is this fact that the defendants, instead of controverting it, seek to escape responsibility by invoking the rule which exempts a party from liability for the negligent act or omission of an independent contractor who has undertaken the performance of certain work for the benefit and at the instance of the party with whom he contracts. That such a rule does exist there can, of course, be no question; for the books record numerous precedents in which it has been asserted and applied (Blake v. Ferris, 5 N. Y. 48; Pack v. City of New York, 8 N. Y. 222; Storrs v. City of Utica, 17 N. Y. 104; King v. Railroad Co., 66 N. Y. 181; Herrington v. Village of Lansingburgh, 110 N. Y. 145, 17 N. E. 728; Roemer v. Striker, 142 N. Y. 134, 36 N. E. 808; Berg v. Parsons, 156 N. Y. 109, 50 N. E. 957, 41 L. R. A. 391); but whether or not it has any application to the present case is quite another matter. In some of the earlier cases, and notably in that of Blake v. Ferris, supra, the rule is very broadly stated, but so much doubt has been expressed in many of the more recent decisions as to the propriety of its application to such a state of facts as exists in the present case that we hardly feel warranted in attaching to it the force and importance which the defendants' counsel claims it should receive. It would be quite an interesting study to review and analyze the doctrine enunciated in Blake v. Ferris, in the light of succeeding adjudications, were it necessary to do so in order to sustain the conclusions at which we have arrived in this case; but, inasmuch as that conclusion is founded upon an exception to the rule, we shall simply advert to two or three cases in which a somewhat different construction than the one contended for is given. In Storrs v. City of Utica, 17 N. Y. 104, Comstock, J., in commenting upon the rule laid down in Blake v. Ferris, said:

"The opinion of Judge Mullett contains a very elaborate, and, I doubt not, a very correct, exposition of the doctrine of respondeat superior; but I feel less sure that the doctrine was applied with strict accuracy to the facts in the case."

He then considered the case in connection with that of Pack v. City of New York, 8 N. Y. 222, and that of Kelly v. Same, 11 N. Y. 432, and declares that it is no authority for the proposition that a municipal corporation may relieve itself from the consequences of its failure to fulfill the duty which rests upon it of keeping its streets in a safe condition for travel by interposing a contract with a third party to do the very thing which makes the streets unsafe. In that case an excavation had been made in one of the streets of the city of Utica by a contractor who had entered into a contract with the city to do the work. The excavation was allowed to remain open without any guard, barrier, or protection, in consequence of which the plaintiff drove into it in the nighttime and was injured. After

referring to the rule laid down in the case of Blake v. Ferris, in the language already quoted, the learned judge further declared that:

"Although the work may be let out by contract, the corporation still remains charged with the care and control of the street in which the improvement is carried on. The performance of the work necessarily renders the street unsafe for night travel. This is a result which does not at all depend on the care or negligence of the laborers employed by the contractor. The danger arises from the very nature of the improvement, and if it can be averted only by special precautions, such as placing guard or lighting the street, the corporation which has authorized the work is plainly bound to take those precautions. The contractor may very properly be bound by his agreement not only to construct the sewer, but also to do such other acts as are necessary to protect travel. But a municipal corporation cannot I think in this way either avoid indictment in behalf of the public or its liability to individuals who are injured."

The law, as thus enunciated, it will be seen, is made to depend upon the principle that the defendant, being a municipal corporation, and charged, as such, with the performance of a public duty, cannot escape liability by interposing a contract made with a third party; and herein, as we conceive, lies the main reason for distinguishing it from Blake v. Ferris, which was an action between individuals, and therefore one which called for the application of the general principle that, in order to make one person responsible for the negligent or tortious act of another, the relation of principal and agent, or master and servant, must be shown to have existed at the time of and in respect to the transaction between the wrong-doer and the person sought to be charged. That this is the real interpretation to be given to the rule enunciated in Blake v. Ferris will be made apparent, we think, by an examination of the later decisions, among which may be cited, by way of illustration, Town of Pierrepont v. Loveless, 72 N. Y. 211–214; Thorpe v. Railroad Co., 76 N. Y. 402–406; Devlin v. Smith, 89 N. Y. 470–476; Vogel v. Mayor, etc., 92 N. Y. 10–17.

But, without dwelling longer upon this feature of the case, it will suffice, for the purpose of this review, to indicate that in our opinion the important question which demands our consideration is dependent for its solution, not upon the general principle upon which the doctrine of respondeat superior rests; for it was expressly held by the trial court that, as between the defendants the terminal railway and the firm of Smith & Lally, the relation of master and servant or of principal and agent did not exist, but rather upon a principle which is somewhat exceptional in its character. In the case of Berg v. Parsons, supra, after adverting to and adopting the rule laid down in Blake v. Ferris, as we understand and have endeavored to define that rule, it was said (156 N. Y. 115, 50 N. E. 958, 41 L. Ed. 393):

"There are certain exceptional cases where a person employing a contractor is liable, which, briefly stated, are where the employer personally interferes with the work and the acts performed by him occasion the injury; where the thing contracted to be done is unlawful; where the acts performed create a public nuisance; and where the employer is bound by a statute to do a thing efficiently, and an injury results from its inefficiency."

Obviously, this case falls within neither the first nor second of the exceptions above stated, and we do not feel at liberty to regard the obstruction to the highway which was created by the defendants as in the nature of a public nuisance, inasmuch as that question was eliminated from the case by the trial court at the request of the defendants, and with the apparent acquiescence of the plaintiff; but we do think that, in view of the undisputed facts which the record contains, the terminal railway was liable for the negligence of its contractors Smith & Lally, and their subcontractors Herrick & Hartman, even though by the terms of the contract Smith & Lally or their subcontractors had charge of the work, and had undertaken, pursuant to the requirements of the contract, to properly guard and protect the same while it was in process of construction.

As has already been stated, the right to interfere with the highway had been granted by an order of the supreme court, and that order enjoined, as a condition of the grant, that the railway company should comply with the requirements of the statute, and restore the highway to such state as not to unnecessarily impair its usefulness. Thus, it will be seen that whatever license the railway company had to enter upon the highway for any purpose was in fact conferred by a statute (General Railroad Law, § 11) which imposed upon it a certain duty; and if that duty involved care and vigilance in the prosecution of the work, as well as a substantial restoration of the highway when the work was completed, it necessarily follows that the case falls directly within the last exception, to which reference has just been made. .

We have seen that a duty rests upon a municipality to keep its streets in a reasonably safe condition for the use of the public, and that it cannot escape the responsibility which that duty involves by contracting with some irresponsible person to perform work in a public highway which is of a dangerous character. This much was expressly decided in the case of Storrs v. City of Utica, supra; and it is now a well-settled rule of municipal law in this state. 2 Dill. Mun. Corp. § 790 et seq.; Brusso v. City of Buffalo, 90 N. Y. 679; Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095; Scanlan v. City of Watertown, 14 App. Div. 1, 43 N. Y. Supp. 618.

Manifestly, as it seems to us, the obligation assumed by a railroad company when it takes possession of a highway for the purpose of effecting a crossing thereof is analogous for the time being to that which pertains at all times to a municipality in its care of its streets; and we are consequently of the opinion that the statute under which the defendants were prosecuting their work imposed upon them duties similar to those which would have rested upon a municipality engaged in the same character of work and for precisely the same reason. It is true that the statute does not in express terms declare that when carrying its line of road across a public highway a railway company must guard and protect the traveling public from such damages as may reasonably be anticipated from its interference with the highway, but it does confer the right to excavate, fill in, and change the grade of the highway, and this

necessarily involves some obstruction and inconvenience to trav-
elers thereon. If, therefore, in the conduct of its operations, the ob-
struction is unnecessarily dangerous, or if it is permitted to remain
for an unreasonable length of time, or if while it remains it is not
properly guarded, it becomes a public nuisance, and certainly it is
not the policy of the law to sanction the creation or maintenance of
a' nuisance which would be a' constant menace to life and property.
Woodman v. Railroad Co., 149 Mass. 335, 21 N. E. 482, 4 L. R. A.
213; Mundy v. Railroad Co., 75 Hun, 479, 27 N. Y. Supp. 469.

In Conklin v. Railway Co., 102 N. Y. 107–112, 6 N. E. 663, 666,
the court, in discussing the rights and duties conferred upon rail-
road corporations by the statute we are now considering, says:

"In the process of restoration they simply stand in the place of the high-
way commissioners, having for the purpose of restoration, and so far as
needed, all their official rights, and charged with their duties."

Again, in Rauenstein v. Railway Co., 136 N. Y. 528–534, 32 N. E.
1047, 1049, 18 L. R. A. 768, 770, it was said:

"It is thus evident that the source of the power to change the grade of a
street to permit of carrying it over the railroad crossing is in the general or
public law, which creates a duty in that respect, which is transferred from
the local authorities to the shoulders of the railroad company, in the perform-
ance of which it stands in the place of the local authorities."

And the rule which we think must govern in cases of this char-
acter is nowhere more clearly stated than by Truax, J., in Flynn
v. Railroad Co., 49 N. Y. Super. Ct. 60. He says:

"It would not, I conceive, be denied that whoever, a natural person or a
corporation, is authorized to disturb the surface or bed of the highway, wheth-
er by way of privilege or duty, must in so doing use ordinary diligence to
prevent accidents to wayfarers from the impaired condition of the road. For
instance, to guard against persons or vehicles falling into a hole, if such be
the kind of work, fencing must be made or notice given by lights, or, rather,
due diligence must be used to give such kind of protection to passers-by. The
fact that the right is exercised by means of a contract made with other
persons does not lessen the obligation referred to. The obligation is impera-
tive so long as the excavation exists."

These authorities, and many more of like import, make clear, as
we think, the general proposition that, in every case where a per-
son or corporation is permitted by statute to interfere with or tem-
porarily obstruct a public highway, such permission carries with it
and imposes upon the person or corporation a corresponding duty,
from the full performance of which there is no escape. The execu-
tion of the particular work, to facilitate which the license is given,
may be delegated to a contractor, and he may, as between himself
and his principal, undertake to perform the duty which rests upon
the latter; but the obligation still remains where it originally re-
sided, and cannot be so delegated as to relieve the licensee from the
consequences of his failure to perform (3 Elliott, R. R. § 1063;
Downey v. Low, 22 App. Div. 461, 48 N. Y. Supp. 207; Johnston v.
Bridge Co., 44 App. Div. 581, 60 N. Y. Supp. 947); and, if this prop-
osition is one of general application, it is obviously relevant to the
facts of this case.

The railway company, in order to construct the line of road, availed itself of its statutory privilege to interfere with and materially obstruct a much-traveled highway; in doing which it disregarded the plainest mandate of duty, and carried on its operations in a manner which was grossly negligent. In consequence of the manner in which the work was performed and the complementary duty left unfulfilled, the plaintiff has received a serious personal injury for which she seeks to charge all the defendants, upon the principle that they are joint tort feasors; and to permit either or all of them to escape the consequences of their negligence, and shield themselves behind the rule which is invoked in their behalf, would, we believe, be an unauthorized application of that rule.

One or two other questions of minor importance are perhaps entitled to some consideration. It is said that the amount of damages awarded by the jury, viz. $8,000, is excessive. That the verdict was a large one cannot be denied, but that it was larger than the facts warranted we are not prepared to say. The plaintiff's injuries were serious, and must have been exceedingly painful. She was confined to her bed and house for many weeks, and was unable to dispense with the use of crutches until about three months after the accident. At the time of the trial, in January, 1899, she had by no means fully recovered her health or strength, and, although the evidence will perhaps justify the inference that ultimate recovery is probable, it is reasonable to infer that if it does come it will be preceded by many days of weakness and suffering. It is a delicate and difficult task, in cases of this description, to satisfactorily estimate the consequences of personal injury in dollars and cents, and of necessity much must be left to the judgment and discretion of a jury, guided and directed by the wise counsel of the trial justice, with whom rests primarily the duty of correcting any abuse of discretion, and in this particular instance we are inclined to lay much stress upon the fact that the trial justice did not deem it proper to interfere with the verdict rendered by the jury, although opportunity was afforded him.

At the conclusion of the charge of the learned trial court the counsel for the defendants, Smith & Lally, requested the court to instruct the jury that those defendants were under no obligations, by reason of their contract with the terminal railway, to guard any work they did in the street. This request was granted, and the jury were so instructed, to which ruling the counsel for the company duly excepted, and subsequently he requested the court to charge the exact converse of the proposition. This latter request was, of course, refused, and another exception was taken. It is now contended that these exceptions present such prejudicial error as requires a reversal of the judgment. Without passing upon the question of whether or not the rulings excepted to were erroneous, it is sufficient, for the purposes of this review, to suggest that the requests in response to which they were made related solely to the relations and obligations existing between the defendants themselves, and as to which the plaintiff occupied the attitude of a dis-

interested party. The defendants, if liable at all, were liable as joint tort feasors; and the plaintiff ought not to suffer if perchance the trial court, at the request of one of the defendants, states the law more favorably to him than to his co-defendant. Zimmer v. Railroad Co., 36 App. Div. 265, 55 N. Y. Supp. 308.

We have examined the other exceptions, but find nothing in them requiring specific mention, and our conclusion of the whole matter is that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur, except LAUGHLIN, J., not sitting.