MARY D. DEMING, Respondent, *v.* THE TERMINAL RAILWAY COMPANY OF BUFFALO and Others, Appellants, Impleaded with Another.

*Duty of a railroad company carrying a public highway across its tracks — the railroad company and an independent contractor employed by it are liable as joint tort feasors for an injury resulting from the fault of a sub-contractor — a charge more favorable to one than to the other of two joint tort feasors — an $8,000 verdict is not excessive.*

A railroad company which obtains permission from the Supreme Court to carry a public highway across its tracks, is bound to exercise care and vigilance to protect the traveling public from injuries resulting from the performance of the work, and it cannot relieve itself from that duty by employing an independent contractor.

Where the contractor employed by the railroad company sublets the work, and a person traveling along the highway is injured through the failure of the sub-contractor to properly guard an embankment built by him in the highway, the railroad company and the principal contractor are joint tort feasors.

The refusal of the judge presiding at the trial of an action brought against two or more joint tort feasors, to charge as favorably to one of such joint tort feasors as to the others, is not a ground for the reversal of a judgment in favor of the plaintiff.

An $8,000 verdict rendered in an action to recover damages for personal injuries cannot be considered excessive, where the plaintiff, as the result of her injuries, was confined to her bed for many weeks and was unable to dispense with the use of crutches until about three months after the accident, and had not fully recovered her health and strength at the time of the trial, although it was probable that she would ultimately recover.

APPEAL by the defendants, The Terminal Railway Company of Buffalo and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 1st day of February, 1899, upon the verdict of a jury for $10,000, rendered after a trial at the Erie Trial Term, and also from an order entered in said clerk's office on the 13th day of April, 1899, denying the said defendants' motion for a new trial made upon the minutes.

The appellant, The Terminal Railway Company of Buffalo, is a corporation duly organized under the laws of this State, its purpose being to form a connecting link between the Lake Shore and Michigan Southern and the New York Central and Hudson River railroads. In 1897 it was engaged in constructing the line of its road from Depew to Blasdell, in the county of Erie, a distance of about eleven miles, and to that end had entered into a contract with the appellants Smith & Lally, by the terms of which that firm was to perform the entire work of construction in accordance with the plans and specifications annexed to and made a part of the contract. These plans required that all highways intersected by the proposed line of road should be carried either over or under the railway, and among such highways was one known as the " White's Corners Road," which runs north and south, and is an important thoroughfare extending from the city of Buffalo to the village of Hamburg. At the point of intersection the railroad and highway run at right angles, and on the 29th day of June, 1897, an order was granted by the Supreme Court permitting the railway to construct its road across the highway at this point upon condition that it should comply with the statute and restore the highway to such state as not to unnecessarily impair its usefulness.

In virtue of the license thus granted the railroad company proceeded to make the crossing in accordance with certain plans and specifications, which required that the highway should be elevated eight feet and five inches above its original grade; that the railroad tracks should be depressed about twelve feet below the original grade, and that the highway should then be carried across the tracks by means of an overhead bridge.

On the 7th day of September, 1897, one Herrick, of the firm of Herrick & Hartman, to whom Smith & Lally claim to have sublet

this portion of the work, started to construct the northerly approach to the proposed crossing, and in the course of his operations removed the earth from the west to the east side of the highway, in consequence of which an embankment was soon formed which covered a little over one-half of the highway for a distance of about six hundred feet north of the proposed crossing. This embankment, which extended up to within fifty or one hundred feet of the temporary track, was about twelve feet wide on top, the sides sloping gradually, and its maximum height being from four to seven feet. When completed it was designed to serve as the roadbed or northerly approach to the bridge over the tracks.

The highway at this point was four rods wide, and the presence of the embankment left a space about thirty feet in width upon the west side thereof for the passage of teams; but only about twelve or fifteen feet of this space was used by the traveling public.

On the afternoon of September 16, 1897, the plaintiff and her husband, in company with some ten or twelve other people, started from Buffalo in a four-seated drag to attend a fair at Hamburg. The drag was drawn by four horses and was in charge of a competent and experienced driver. The party arrived at Hamburg by the Lake Shore road between three and four o'clock and remained there until about nine o'clock in the evening, when they started to return to Buffalo by the White's Corners road. The night was dark and rainy and there were no lights upon the drag and none upon or in the vicinity of the embankment. The drag reached the crossing at about eleven o'clock, and the driver, not knowing of the existence of the embankment, drove directly ahead, instead of bearing off to the left, as should have been done in order to avoid the embankment. As a consequence, when about 100 feet north of the crossing the wagon struck the embankment and tipped over. The plaintiff, who was sitting on the back seat, was thrown to the ground and severely injured, and it is to recover damages for such injuries that this action is brought.

Originally the town of Hamburg was one of the parties defendant, but upon the trial the complaint was dismissed as to it, and no appeal has been taken from the order of dismissal.

*Maurice C. Spratt,* for the appellant railway.

*J. McC. Mitchell,* for the appellants Smith & Lally.

*Clarence M. Bushnell,* for the respondent.

ADAMS, P. J.:

Upon the undisputed facts of this case it is clear that the placing of the embankment in question in the traveled part of a public highway over which hundreds of teams were passing daily, without taking the slightest precaution to warn or protect travelers who might have occasion to approach it on a dark night, was an act of gross and inexcusable negligence. Indeed, so patent is this fact that the defendants, instead of controverting it, seek to escape responsibility by invoking the rule which exempts a party from liability for the negligent act or omission of an independent contractor who has undertaken the performance of certain work for the benefit and at the instance of the party with whom he contracts.

That such a rule does exist there can, of course, be no question, for the books record numerous precedents in which it has been asserted and applied (*Blake* v. *Ferris,* 5 N. Y. 48; *Pack* v. *Mayor,* 8 id. 222; *Storrs* v. *City of Utica,* 17 id. 104; *King* v. *N. Y. C. & H. R. R. R. Co.,* 66 id. 181; *Herrington* v. *Village of Lansingburgh,* 110 id. 145; *Roemer* v. *Striker,* 142 id. 134; *Berg* v. *Parsons,* 156 id. 109); but whether or not it has any application to the present case is quite another matter.

In some of the earlier cases, and notably in that of *Blake* v. *Ferris (supra),* the rule is very broadly stated, but so much doubt has been expressed in many of the more recent decisions as to the propriety of its application to such a state of facts as exists in the present case, that we hardly feel warranted in attaching to it the force and importance which the defendants' counsel claims it should receive.

It would be quite an interesting study to review and analyze the doctrine enunciated in *Blake* v. *Ferris,* in the light of succeeding adjudications, were it necessary to do so in order to sustain the conclusion at which we have arrived in this case; but inasmuch as that conclusion is founded upon an exception to the rule, we shall simply advert to two or three cases in which a somewhat different construction than the one contended for is given.

In *Storrs* v. *City of Utica* (17 N. Y. 104) COMSTOCK, J., in

commenting upon the rule laid down in *Blake* v. *Ferris*, said : " The opinion of Judge MULLETT contains a very elaborate and, I doubt not, a very correct exposition of the doctrine of *respondeat superior ;* but I feel less sure that the doctrine was applied with strict accuracy to the facts in the case." He then considered the case in connection with that of *Pack* v. *Mayor* (8 N. Y. 222) and that of *Kelly* v. *Mayor* (11 id. 432), and declares that it is no authority for the proposition that a municipal corporation may relieve itself from the consequences of its failure to fulfill the duty which rests upon it of keeping its streets in a safe condition for travel by interposing a contract with a third party to do the very thing which makes the streets unsafe. In that case an excavation had been made in one of the streets of the city of Utica by a contractor who had entered into a contract with the city to do the work. The excavation was allowed to remain open without any guard, barrier or protection, in consequence of which the plaintiff drove into it in the night time and was injured. After referring to the rule laid down in the case of *Blake* v. *Ferris*, in the language already quoted, the learned judge further declared that " Although the work may be let out by contract, the corporation still remains charged with the care and control of the street in which the improvement is carried on. The performance of the work necessarily renders the street unsafe for night travel. This is a result which does not at all depend on the care or negligence of the laborers employed by the contractor. The danger arises from the very nature of the improvement, and if it can be averted only by special precautions, such as placing guards or lighting the street, the corporation which has authorized the work is plainly bound to take those precautions. The contractor may very probably be bound by his agreement, not only to construct the sewer, but also to do such other acts as are necessary to protect travel. But a municipal corporation cannot, I think, in this way, either avoid indictment in behalf of the public or its liability to individuals who are injured."

The law, as thus enunciated, it will be seen, is made to depend upon the principle that the defendant, being a municipal corporation, and charged, as such, with the performance of a public duty, cannot escape liability by interposing a contract made with a third

party ; and herein, as we conceive, lies the main reason for distinguishing the case from *Blake* v. *Ferris*, which was an action between individuals, and, therefore, one which called for the application of the general principle that in order to make one person responsible for the negligent or tortious act of another, the relation of principal and agent, or master and servant, must be shown to have existed at the time of and in respect to the transaction between the wrongdoer and the person sought to be charged. That this is the real interpretation to be given to the rule enunciated in *Blake* v. *Ferris* will be made apparent, we think, by an examination of the later decisions, among which may be cited by way of illustration *Town of Pierrepont* v. *Loveless* (72 N. Y. 211, 214); *Thorpe* v. *N. Y. C. & H. R. R. R. Co.* (76 id. 402, 406); *Devlin* v. *Smith* (89 id. 470, 476); *Vogel* v. *Mayor* (92 id. 10, 17).

But without dwelling longer upon this feature of the case, it will suffice, for the purpose of this review, to indicate that, in our opinion, the important question which demands our consideration is dependent for its solution, not upon the general principle upon which the doctrine of *respondeat superior* rests, for it was expressly held by the trial court that, as between the defendants the Terminal Railway Company and the firm of Smith & Lally, the relation of master and servant or of principal and agent did not exist, but rather upon a principle which is somewhat exceptional in its character.

In the case of *Berg* v. *Parsons* (*supra*), after adverting to and adopting the rule laid down in *Blake* v. *Ferris*, as we understand and have endeavored to define that rule, it was said (p. 115) : " There are certain exceptional cases where a person employing a contractor is liable, which, briefly stated, are : Where the employer personally interferes with the work, and the acts performed by him occasion the injury ; where the thing contracted to be done is unlawful ; where the acts performed create a public nuisance ; and where an employer is bound by a statute to do a thing efficiently, and an injury results from its inefficiency."

Obviously this case falls within neither the first nor second of the exceptions above stated, and we do not feel at liberty to regard the obstruction to the highway, which was created by the defendants, as in the nature of a public nuisance, inasmuch as that question was

eliminated from the case by the trial court at the request of the defendants and with the apparent acquiescence of the plaintiff; but we do think that, in view of the undisputed facts which the record contains, the Terminal Railway Company was liable for the negligence of its contractors, Smith & Lally, and their sub-contractors, Herrick & Hartmann, even though by the terms of the contract Smith & Lally, or their sub-contractors, had charge of the work and had undertaken, pursuant to the requirements of the contract, to properly guard and protect the same while it was in process of construction.

As has already been stated, the right to interfere with the highway had been granted by an order of the Supreme Court, and that order enjoined, as a condition of the grant, that the railway company should comply with the requirements of the statute and restore the highway to such state as not to unnecessarily impair its usefulness. Thus it will be seen that whatever license the railway company had to enter upon the highway for any purpose was in fact conferred by a statute (General Railroad Law, Laws of 1890, chap. 565, § 11) which imposed upon it a certain duty; and if that duty involved care and vigilance in the prosecution of the work, as well as a substantial restoration of the highway when the work was completed, it necessarily follows that the case falls directly within the last exception to which reference has just been made.

We have seen that a duty rests upon a municipality to keep its streets in a reasonably safe condition for the use of the public, and that it cannot escape the responsibility which that duty involves by contracting with some irresponsible person to perform work in a public highway which is of a dangerous character. This much was expressly decided in the case of *Storrs* v. *City of Utica* (*supra*) and it is now a well-settled rule of municipal law in this State. (2 Dillon Mun. Corp. § 790 *et seq.; Brusso* v. *City of Buffalo*, 90 N. Y. 679; *Pettengill* v. *City of Yonkers*, 116 id. 558; *Scanlon* v. *City of Watertown*, 14 App. Div. 1.)

Manifestly, as it seems to us, the obligation assumed by a railroad company when it takes possession of a highway for the purpose of effecting a crossing thereof is analogous for the time being to that which pertains at all times to a municipality in its care of its streets, and we are consequently of the opinion that the statute under which

the defendants were prosecuting their work imposed upon them duties similar to those which would have rested upon a municipality engaged in the same character of work and for precisely the same reason.

It is true that the statute does not in express terms declare that when carrying its line of road across a public highway a railway company must guard and protect the traveling public from such damages as may reasonably be anticipated from its interference with the highway; but it does confer the right to excavate, fill in and change the grade of the highway, and this necessarily involves some obstruction and inconvenience to travelers thereon. If, therefore, in the conduct of its operations the obstruction is unnecessarily dangerous, or if it is permitted to remain for an unreasonable length of time, or if while it remains it is not properly guarded, it becomes a public nuisance, and certainly it is not the policy of the law to sanction the creation or maintenance of a nuisance which would be a constant menace to life and property. ( *Woodman* v. *Met. R. R. Co.*, 149 Mass. 335 ; *Mundy* v. *N. Y., L. E. & W. R. R. Co.*, 75 Hun, 479.)

In *Conklin* v. *N. Y., Ont. & W. R. Co.* (102 N. Y. 107, 112), the court, in discussing the rights and duties conferred upon railroad corporations by the statute we are now considering, says : " In the process of restoration they simply stand in the place of the highway commissioners, having for the purpose of the restoration and so far as needed, all their official rights, and charged with all their duties."

Again, in *Rauenstein* v. *N. Y., L. & W. R. Co.* (136 N. Y. 528, 534), it was said : " It is thus evident that the source of the power to change the grade of the street to permit of carrying it over the railroad crossing, is in the general or public law; which creates a duty in that respect, which is transferred from the local authorities to the shoulders of the railroad company; in the performance of which it stands in the place of the local authorities." And the rule which we think must govern in cases of this character is nowhere more clearly stated than by TRUAX, J., in *Flynn* v. *N. Y. Elevated R. R. Co.* (49 N. Y. Super. Ct. 60). He says : " It would not, I conceive, be denied    *    *    *    that whoever, a natural person or corporation, is authorized to disturb the surface or bed of a highway, whether by way of privilege or duty, must in doing it use ordinary

diligence to prevent accidents to wayfarers from the impaired condition of the road.   For instance, to guard against persons or vehicles falling into the hole, if such be the kind of work, fencing must be made or notice given by lights, or, rather, due diligence must be used to give such kind of protection to passersby.  *  *  *  *The fact that the right is exercised by means of a contract made with other persons, does not lessen the obligation referred to.   The obligation is imperative so long as the excavation exists.*"

These authorities, and many more of like import, make clear, as we think, the general proposition that in every case where a person or corporation is permitted by statute to interfere with, or temporarily obstruct, a public highway, such permission carries with it and imposes upon the person or corporation a corresponding duty, from the full performance of which there is no escape.

The execution of the particular work, to facilitate which the license is given, may be delegated to a contractor, and he may, as between himself and his principal, undertake to perform the duty which rests upon the latter, but the obligation still remains where it originally resided, and cannot be so delegated as to relieve the licensee from the consequences of his failure to perform (3 Elliott Railroads, § 1063; *Downey* v. *Low,* 22 App. Div. 461; *Johnston* v. *Phœnix Bridge Co.,* 44 id. 581), and if this proposition is one of general application, it is obviously relevant to the facts of this case.

The railway company, in order to construct the line of road, availed itself of the statutory privilege to interfere with and materially obstruct a much-traveled highway, in doing which it disregarded the plainest mandate of duty and carried on its operations in a manner which was grossly negligent.   In consequence of the manner in which the work was performed and the complementary duty left unfulfilled, the plaintiff has received a serious personal injury, for which she seeks to charge all the defendants, upon the principle that they are joint tort feasors; and to permit either or all of them to escape the consequences of their negligence and shield themselves behind the rule which is invoked in their behalf, would, we believe, be an unauthorized application of that rule.

One or two other questions of minor importance are perhaps entitled to some consideration.

It is said that the amount of damages awarded by the jury, viz.,

$8,000, is excessive. That the verdict was a large one cannot be denied, but that it was larger than the facts warranted we are not prepared to say. The plaintiff's injuries were serious, and must have been exceedingly painful. She was confined to her bed and house for many weeks, and was unable to dispense with the use of crutches until about three months after the accident. At the time of the trial, in January, 1899, she had by no means fully recovered her health or strength, and although the evidence will perhaps justify the inference that ultimate recovery is probable, it is reasonable to infer that if it does come it will be preceded by many days of weakness and suffering. It is a delicate and difficult task in cases of this description to satisfactorily estimate the consequences of personal injury in dollars and cents, and of necessity much must be left to the judgment and discretion of a jury, guided and directed by the wise counsel of the trial justice with whom rests primarily the duty of correcting any abuse of discretion ; and in this particular instance we are inclined to lay much stress upon the fact that the trial justice did not deem it proper to interfere with the verdict rendered by the jury, although opportunity was afforded him.

At the conclusion of the charge of the learned trial court the counsel for the defendants Smith & Lally requested the court to instruct the jury that those defendants were under no obligations by reason of their contract with the Terminal Railway Company to guard any work they did in the street. This request was granted and the jury were so instructed, to which ruling the counsel for the company duly excepted, and subsequently he requested the court to charge the exact converse of the proposition. This latter request was, of course, refused, and another exception was taken. It is now contended that these exceptions present such prejudicial error as requires a reversal of the judgment.

Without passing upon the question of whether or not the rulings excepted to were erroneous, it is sufficient for the purposes of this review to suggest that the requests in response to which they were made related solely to the relations and obligations existing between the defendants themselves, as to which the plaintiff occupied the attitude of a disinterested party. The defendants, if liable at all, were liable as joint tort feasors ; and the plaintiff ought not to suffer if perchance the trial court at the request of one of the defendants

states the law more favorably to him than to his co-defendant. (*Zimmer* v. *Third Ave. R. R. Co.*, 36 App. Div. 265.)

We have examined the other exceptions, but find nothing in them requiring specific mention ; and our conclusion of the whole matter is that the judgment and order appealed from should be affirmed.

All concurred, except LAUGHLIN, J., not sitting.

Judgment and order affirmed, with costs.